**BILL BLASS, LTD. and
Pincus Bros., Inc.**

**v.**

**SAZ CORP. and Zion, Abraham.**

**Appeal of SAZ CORPORATION and
Abraham Zion, Appellants.**

**No. 84–1064.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1984.

Decided Dec. 31, 1984.

---

**6.** Other issues raised for the first time on appeal will not be addressed.

Bernard Chanin (argued), Robert McL. Boote, Neil S. Witkes, Robert C. Podwil, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Eugene M. Kline, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellees.

Alan M. Lerner, Roslyn G. Pollack (argued), Frances M. Visco, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., M. Scott Vayer, New York City, for appellants.

Before GIBBONS and GARTH, Circuit Judges, and ROSENN, Senior Circuit Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

SAZ Corporation, Abraham Zion and Abraham Zion Corporation appeal pursuant to 28 U.S.C. § 1292(a) (1982) from a preliminary injunction in favor of Bill Blass Ltd., and Pincus Brothers, Inc. The preliminary injunction was issued in an action alleging that SAZ and Zion violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (1982) and section 43(a) of the Trademark Act of 1976, 15 U.S.C. § 1125(a) (1982), by the unauthorized sale of coats bearing the Bill Blass name. We conclude that the district court did not abuse its discretion in granting a preliminary injunction. Thus we affirm.

### I.

Bill Blass, Ltd. (Blass) is the sole owner (in its own name or that of its predecessor, Bill Blass, Inc.) of various trade and service marks used in connection with men's and women's wearing apparel and other consumer goods. Blass licenses manufacturers of wearing apparel to use its trademark on clothing the design of which Blass approves. This dispute arises as a consequence of two such license agreements.

In 1967 Blass granted to Pincus Brothers, Inc. (Pincus) the exclusive right to use the Bill Blass name and marks in connection with the manufacture and sale of menswear (the Men's License). Pincus had the right to sublicense, and in 1978 it granted to After Six, Inc. an exclusive sublicense to use the Bill Blass name in connection with the sale of men's coats. That sublicense was assigned to Harry Fischer Corp. (Fischer), a wholly owned subsidiary of After Six. In 1979 Fischer acquired, directly from Blass, an exclusive license to use the name Bill Blass in the manufacture and sale of women's coats (the Women's License).

Both license agreements provide for the payment of royalties. Both are for a fixed term. The Men's License expired on May 31, 1982. The Women's License expired on December 31, 1982. The Men's License contains no provision authorizing the sale of inventory bearing a Bill Blass label after the license expiration date. The Women's License contains a provision expressly prohibiting manufacture of Bill Blass labeled coats after December 31, 1982, and limiting the right to sell previously manufactured inventory bearing the Bill Blass label to the three months following that date. Thus, unless otherwise authorized as a matter of law, Fischer's right to sell men's coats bearing the Bill Blass label terminated on May 31, 1982, and its right to sell women's coats bearing that label terminated on March 31, 1983.

On October 7, 1981 Abraham Zion Corporation (Zion) agreed to purchase all the assets of Fischer. The Fischer-Zion Agreement of Sale provides in relevant part:

5.1 On the Closing Date ..., Buyer [Zion] shall assume and agree to pay, perform and discharge the following debts, obligations, contracts and liabilities of Sellers [Fischer] relating to all periods from and after the Effective Date [May 31, 1981].

5.1.1 All obligations of Fischer ... pursuant to the ... agreement dated December 31, 1979 between Bill Blass, Ltd. and Fischer [the Women's License], agreement dated November 21, 1978 between [Pincus] and After Six Incorporated [the Men's License] .... In each and every instance, Buyer [Zion] shall assume the foregoing obli-

gations as either assignee or sublessee
. . . .

The Bill of Sale delivered at the Fischer-Zion closing, which included Fischer's inventory, transferred to Zion 14,000 completed Bill Blass coats, together with work-in-progress and coat liners manufactured by Fischer according to Bill Blass designs. After the closing Zion manufactured a limited number of coats of Bill Blass design. Zion also sold some completed coats in the Fischer inventory to retail stores. Zion made several royalty payments to Blass in accordance with the terms of the license agreements.

Shortly after Blass learned that Zion was selling Bill Blass coats at a factory outlet after the expiration of the licenses, it commenced this suit charging trademark infringement and unfair competition. After notice to the defendants and a hearing the district court granted plaintiffs' motion for a temporary restraining order prohibiting Zion from selling, advertising, or otherwise transferring goods bearing the Bill Blass name or trademark. That temporary restraining order was continued by agreement of the parties until a hearing on Blass' motion for a preliminary injunction, held on December 23, 1983. That hearing concluded on January 5, 1984. At its conclusion the trial court, after making findings of fact, preliminarily enjoined Zion, Abraham Zion as an officer of Zion, and any corporations under Zion's control, from "shipping, delivering, transferring, distributing, selling, returning or otherwise in any manner disposing of" goods bearing the Bill Blass name or trademark. The injunction is conditioned on the filing of a $50,000 bond for the payment of costs and damages which may be incurred by the defendants if it is found that they have been wrongfully enjoined. The injunction permits sale of the inventory acquired from Fischer so long as the Bill Blass labels are removed and the merchandise is not otherwise identified as a Bill Blass design. This appeal followed.

## II.

Our review of the grant of a preliminary injunction is narrow. We must affirm unless we find that the court abused its discretion, committed an obvious error of law, or made a serious mistake in considering the proof. *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976). The appellant challenging the determination of the trial court on a motion for a preliminary injunction bears a heavy burden. *SK&F Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1066 (3d Cir.1980). When ruling on such a motion, the trial court must take into account four factors: (1) the likelihood that the applicant will prevail on the merits at final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *E.g., Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 600–01 (3d Cir.1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980). Applying these legal standards, the preliminary injunction must be affirmed.

### A. Likelihood of Success at Final Hearing

The Blass claim arises under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). Blass contends that Zion and other persons or corporations acting in concert with Zion are making unauthorized use of the Bill Blass trademark in connection with the sale of goods, and that this use is likely to cause confusion. Blass also contends that Zion's unauthorized use of the Bill Blass name constitutes a "false description or representation" of the product. The sale of trademarked goods after termination of a license amounts to trademark infringement. *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3d Cir. 1981).

Zion does not dispute Blass' ownership of the trademarks. It asserts as a defense that under the Men's License and the Wom-

en's License it remains free to liquidate inventory bearing the Bill Blass label. Zion urges that because the Men's License contains no express provision covering post-expiration liquidating of inventory, it was intended by the licensor that inventory could be liquidated over an indefinite period. The trial court did not commit an obvious error of law in rejecting that construction of the license agreement. The far more reasonable construction is that the licensee under the Men's License undertook the risk that if it kept its inventory at too high a level the inventory might not be sold by the expiration date of the license. The Women's License deals explicitly with liquidation of inventory, providing that apparel in inventory may be liquidated over ninety days. It is not disputed that the sales which the injunction prohibits would have occurred long after the expiration of that grace period. Zion's rights, if any, as a licensee depend on the terms of the Men's and Women's Licenses. The trial court correctly concluded that Zion's defense based on those agreements is not likely to be successful at final hearing.

Alternatively Zion urges that it was not a licensee, but was a bona fide first purchaser from Fischer, the Blass licensee and, as a bona fide purchaser, Zion is free as a matter of law to resell the garments without removing the labels. The trial court found that Zion, far from being a bona fide purchaser, undertook in Paragraph 5.1 of the Fischer-Zion Agreement to assume Fischer's obligations under the licenses. That finding is clearly supported by the terms of the Agreement of Sale. The Bill of Sale, moreover, provides that the Fischer assets are transferred "pursuant to the terms of [the] Agreement of Sale." Thus the court did not commit an obvious error of law in concluding that Zion acquired the inventory, not as a bona fide first purchaser in the ordinary course of Fischer's business, but under an express undertaking that the acquisition was subject to the terms of the licenses. Thus the trial court correctly concluded that Zion's defense that it was a bona fide first purchaser is not likely to be successful at final hearing.

## B. Irreparable Harm to Blass Pending Final Hearing

Zion urges that the court erred in concluding that Blass would suffer irreparable harm pending final hearing. It urges that the garments in issue were manufactured to Blass specifications and that if infringement is found it may be charged a reasonable royalty. Blass produced evidence tending to show that the value of designer label fashions lies in their timeliness. While the licensor and the licensee have an ongoing business relationship both have a common interest in convincing the purchasing public that a Bill Blass design represents the latest fashion fad. Thus while the relationship continues it is not likely that a licensee will introduce into the marketplace as current Bill Blass designs those of a prior season. Once the relationship of licensor and licensee has terminated, however, such congruity of interest ceases, and the licensor must negotiate with new licensees for the production and sale of current designs. The effect on those negotiations, and on the intangible value of the Bill Blass trademark, of a large number of out-of-date models bearing the Bill Blass label cannot be measured in money.

The trial court made findings on irreparable injury:

> I find that there is irreparable harm likely to result both as to the men's wear and the women's wear. Under the circumstances, the plaintiff had a reasonable right to expect a timely disposition of the inventory by a licensee. That was arguably not done.
>
> Plaintiffs now face the prospects of immediate negotiations with licensees respecting the fall sales, and licensees-manufacturers have to gauge their market with retailers. There is evidence that those negotiations or contracts are jeopardized irreparably; they may be lost or not consummated.

App. 233–34. The court then referred to the large disparity between the parties' estimates of the size of the Zion inventory, and continued:

So, I find that there has been a demonstration of irreparable harm by the plaintiffs and, further, I find that there is a sufficient uncertainty of goods which might be untimely disposed of by a likely licensee increases the likelihood that current contract negotiations would be jeopardized.

.      .      .      .      .

Moreover, I find that plaintiffs' financial loss is not the kind that is readily measurable or for which there is a complete and adequate remedy at law ....

App. 234–35. These findings are supported by the evidence. Thus the trial court properly addressed the likelihood of irreparable harm to Blass pendente lite, and made no serious factual mistake in concluding that such harm was likely.

### C. Irreparable Harm to Zion Pending Final Hearing

Zion urges that it is being irreparably harmed by its inability to sell its inventory of coats without removing the Bill Blass label. The trial court rejected that contention, concluding that "with respect to the monetary loss or risk of loss to the defendants if there were a preliminary injunction, I find that that is easily measurable, ascertainable, and there is an adequate remedy at law." App. 235. That conclusion was supported by the finding that "[t]he coats could be sold for value by the defendants if the Bill Blass label were taken out and the linings were changed to eliminate the Bill Blass label altogether." App. 236. Zion does not dispute the accuracy of this finding. The trial court did not err, therefore, either factually or legally, in weighing the possibility of irreparable harm to Zion from a pendente lite injunction.

### D. The Public Interest

Zion urges that the best interests of the public would be served by permitting it to sell its inventory of coats of a five-year-old design to the public, through discount retailers, with the Bill Blass label. The trial court rejected that contention, reasoning:

Balancing the interests of the plaintiffs for an injunction under the circumstances with that of the defendants and the general public, I find that the interests of the plaintiffs outweigh the interests of either the public or the defendants, in that there is a public interest in the protection of the trademark and to avoid confusion in the public.

App. 236. Addressing Zion's contention that a simple disclaimer that the fashion was not a current one would protect the public interest, the court continued:

I do find that it is reasonable to avoid confusion that there simply be a statement—as defendants suggest for the sale of the coats—that they are "out-of-date" coats. There would have to be a fuller explanation as to why they are "out-of-date" coats, and just what the length of "out-of-dateness" is. That has not been suggested or offered by the defendants. Anything less than an explanation of what the public is buying runs the risk of confusion in the public about the quality and reputation of Bill Blass products.

*Id.*

The trial court did not err in its consideration of the public interest. Congress has in the Trademark Act made the policy determination that the public interest is advanced by recognition of property interests in trademarks. Thus the public interest is advanced by preventing the erosion of the value of such interests. The only countervailing public interest advanced by Zion is that of purchasing a coat at a discount from a discount retailer. Under the terms of the injunction, however, Zion is free to sell the coats to such retailers, so long as the label is removed. It is not free to exploit the Bill Blass trademark for which it has no license or to confuse the public as to the currency of the fashions represented in those coats. The trial court did not err, factually or legally, therefore, in considering the public interest.

### III.

We conclude that the trial court did not abuse its discretion, commit an obvious

error of law, or make a serious mistake in considering the proof. The preliminary injunction will, therefore, be affirmed in all respects.