**BURGER KING CORPORATION,**
**Plaintiff,**

v.

**Carole HALL, Defendant.**

**No. 90-2430-CIV.**

United States District Court,
S.D. Florida.

May 21, 1991.

Stephen R. Lang, Howard S. Wolfson, Breed, Abbott & Morgan, New York City, and T. Joan Lawrence, Steel, Hector & Davis, Miami, Fla., for Burger King Corp.

Robert Zarco, Weil, Lucio, Mandler & Croland, Miami, Fla., for Carole Hall.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KEHOE, District Judge.

This cause came before the Court on May 15 through 16, 1991, on plaintiff Burger King Corporation's ("BKC") Motion for a Preliminary Injunction to enjoin the defendant Carole Hall from using BKC's registered trademarks and service marks (the "BKC Marks") at her restaurant. Having considered the papers filed in support of and in opposition to the Motion, the evidence submitted at the preliminary injunction hearing, and the arguments of counsel for the parties, this Court finds as follows:

### FINDINGS OF FACT

#### The Parties

1. BKC is incorporated under the laws of the State of Florida and maintains its principal place of business in Miami, Florida. BKC is engaged in the business of operating a national and worldwide system of company-owned and franchised Burger King® restaurants.

2. Defendant Hall is a citizen and resident of the State of Michigan and a former franchisee of BKC.

#### The BKC Marks

3. BKC employs, advertises and publicizes throughout the United States the BKC Marks.

4. The following BKC Marks are registered in the United States Patent and Trademark Office:

| Reg. No. | Description | Year Registered |
| --- | --- | --- |
| 782,990 | HOME OF THE WHOPPER | 1965 |
| 869,775 | BURGER KING | 1969 |
| 899,775 | WHOPPER | 1970 |
| 901,311 | BURGER KING with logo | 1970 |
| 924,409 | WHALER | 1971 |
| 961,014 | BURGER KING with logo | 1973 |
| 1,057,250 | BURGER KING (Design) (lined for the colors orange and red) | 1977 |
| 1,070,331 | WHALER | 1977 |
| 1,076,177 | BURGER KING | 1977 |
| 1,146,721 | BURGER KING with logo | 1981 |
| 1,451,533 | A.M. EXPRESS | 1987 |
| 1,550,398 | CROISSAN'WICH | 1989 |

5. The registrations of the BKC Marks are currently in full force and effect.

6. Ten of the twelve BKC Marks were registered over five years ago and are therefore now incontestable pursuant to 15 U.S.C. § 1065.

7. All right, title and interest to the BKC Marks and the design, decor and image of Burger King® restaurants is vested

solely in BKC and its wholly-owned subsidiary, Burger King Brands, Inc.

8. BKC and its franchisees have for many years spent vast sums of money advertising and promoting Burger King® restaurants, and the products and services sold under the various BKC marks. In the year 1990 alone, BKC spent approximately $230 million.

9. As a result of this extensive advertising and promotion, valuable goodwill has been developed for the BKC Marks and for the restaurants, products and services which bear the BKC Marks and thus identify BKC as their sponsor and source.

10. BKC franchisees are granted a limited license to use and display the BKC Marks during the term of their franchise agreements. Franchisees are not, however, authorized to use the BKC Marks following the expiration or termination of their franchises. Thus, for example, Hall's Franchise Agreement with BKC expressly provides that upon termination of the Agreement, Hall's right to use or display the BKC Marks "shall terminate forthwith." (Franchise Agreement, Section XII. B.1. & 3.)

*Defendant Hall's Failure to Pay Her Royalties And Advertising Contributions To BKC and BKC's Subsequent Termination of Her Franchise*

11. On or about December 2, 1976, BKC entered into a Franchise Agreement with Robert L. Williams, pursuant to which BKC franchised Williams to operate Burger King® Restaurant No. 1813 located at 9700 Van Dyke, Detroit, Michigan, and granted him a limited license to use the BKC Marks and the Burger King® System of restaurant operation in connection with the restaurant.

12. The Franchise Agreement for Restaurant No. 1813 was assumed by Hall as part of a divorce settlement entered into between Hall and Robert L. Williams, her former husband, in 1983. Following Hall's assumption of the Franchise Agreement, Hall became and remained the individual franchisee of Restaurant No. 1813. No evidence was presented at the hearing to support Hall's claim that Bomarke Corporation ("Bomarke"), a corporation in which she allegedly is the president and principal shareholder, is the actual franchisee of Restaurant No. 1813.

13. To the contrary, in both her Answer to BKC's Complaint in this action and her affidavit in opposition to BKC's Motion for a Preliminary Injunction, Hall admits that she is the individual franchisee of Restaurant No. 1813. Hall also admits that she is the franchisee of Restaurant No. 1813 in a Complaint filed against BKC in another action pending before this Court (*Hall, et al. v. Burger King Corp.*, No. 89–0260–Civ–Kehoe). Bomarke is not mentioned in any of Hall's pleadings.

14. Under the terms of defendant Hall's Franchise Agreement with BKC, in consideration for her license to use the BKC Marks, Hall agreed to pay monthly royalties and advertising and sales promotion contributions to BKC based upon her restaurant's gross sales.

15. Hall received monthly statements from BKC setting forth the amounts due and owing to BKC. The statements directed Hall to contact her credit analyst at BKC if she had any questions regarding the accuracy of her account as stated by BKC. Hall never contacted her credit analyst at BKC to dispute the accuracy of the statements of account or to assert that she was not the individual franchisee of the restaurant.

16. For the period of November 1988 through February 1989, and July 1989 through August 17, 1990, Hall failed to pay her monthly royalties and advertising and sales promotion contributions to BKC as provided in her Franchise Agreement.

17. The failure to pay monthly royalties or advertising and sales promotion contributions is an act of default under Hall's Franchise Agreement with BKC for Restaurant No. 1813. (Franchise Agreement, Section XII A.2.)

18. By letter dated July 12, 1990, BKC sent Hall Notice of Default of her payment obligations under the Franchise Agreement and demanded that she cure the default

within thirty days by paying BKC the monies due and owing to it. A statement of account detailing Hall's indebtedness to BKC was attached to the Notice of Default as Exhibit A.

19. Hall received BKC's Notice of Default.

20. Hall failed to cure her payment defaults within thirty days in accordance with the Notice of Default. In fact, subsequent to receipt of BKC's Notice of Default, Hall neither contacted BKC to question the accuracy of the statement of account attached to the Notice or to protest the termination of her Franchise Agreement for nonpayment.

21. As a result of her failure to cure the default at Restaurant No. 1813, by letter dated August 17, 1990, BKC notified Hall that the Franchise Agreement for Restaurant No. 1813 and, accordingly, her license to use the BKC Marks, was terminated effective immediately.

22. BKC's August 17, 1990 Notice of Termination demanded that Hall immediately comply with the post-termination covenants of her Franchise Agreement, including that she cease holding out her restaurant to the public as an authorized Burger King® restaurant and desist from all use of the BKC Marks at the restaurant.

23. Hall received BKC's Notice of Termination.

24. Despite BKC's termination of her Franchise Agreement, Hall admittedly continues to hold out her restaurant to the public as an authorized Burger King® restaurant and to use the BKC Marks at her restaurant.

25. Hall's continued use and display of the BKC Marks is without the license or consent of BKC, and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to the source, affiliation and sponsorship of her restaurant.

26. By virtue of the termination of Hall's Franchise Agreement, BKC is unable to control the nature and quality of the goods and services that Hall now provides at her restaurant.

27. Consumers who presently patronize Hall's restaurant have no way of knowing that Hall's Franchise Agreement with BKC was terminated and that her restaurant is no longer affiliated with BKC. Accordingly, any shortcomings of Hall's restaurant will be attributed to BKC.

28. To enjoin Hall's infringement of its Marks, BKC commenced this action in October 1990 and promptly moved for entry of a preliminary injunction.

## CONCLUSIONS OF LAW

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to:

(a) Section 1332(a)(1) of the Judicial Code, 28 U.S.C. § 1332(a)(1), since the matter in controversy is between citizens of two different states and exceeds the value of $50,000, exclusive of interest and costs;

(b) Section 39 of the Lanham Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1121, and Sections 1331, 1337 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1337, 1338(a); and

(c) Section 1338 of the Judicial Code, 28 U.S.C. § 1338(b), and the doctrines of ancillary and pendent jurisdiction.

2. Venue is proper in this Court pursuant to the provisions of Section 1391(a) and (b) of the Judicial Code, 28 U.S.C. § 1391(a) and (b).

3. BKC's claims arise out of Hall's alleged violation of Sections 32(1)(a) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), the Florida common law of trademark infringement, service mark infringement and unfair competition, and Hall's breach of the terms of her Franchise Agreement with BKC, which is governed by Florida law.

4. In trademark infringement actions, as in other cases, the standard for preliminary injunctive relief is well-settled. A plaintiff must show:

(1) a substantial likelihood that [it] will prevail on the merits; (2) a substantial threat that [it] will suffer irreparable injury if interlocutory injunctive relief is

not granted; (3) [that the] threatened injury to [it] outweighs any threatened harm injunction may do to defendants; and (4) [that] granting preliminary injunction will [not] disserve the public interest. *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 n. 13 (11th Cir.1985) (citation omitted); *Sundor Brands, Inc. v. Borden, Inc.,* 653 F.Supp. 86, 90 (M.D.Fla.1986).

█ 5. BKC relies primarily on two of its claims to support the issuance of a preliminary injunction: (1) federal trademark infringement prohibited by Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); and (2) federal unfair competition prohibited by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This Court finds that these two claims support the issuance of a preliminary injunction and accordingly need not address BKC's remaining claims. *See Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc., supra,* 756 F.2d at 1534.

### A. BKC Is Likely To Prevail On Its Claims Under The Lanham Act

6. Under either Section 32(1), which proscribes trademark infringement, or Section 43(a), which prohibits, *inter alia,* false designations as to the source or origin of business establishments, services and goods, the Lanham Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product." *Home Box Office v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311, 1314 (2d Cir. 1987). "[T]he critical question ... is whether there is a likelihood of confusion, mistake or deception between the registered mark and the allegedly infringing mark." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 972 (11th Cir. 1983); *Sun Fun Prods., Inc. v. Suntan Research & Dev., Inc.,* 656 F.2d 186, 189 (5th Cir.1981).

7. In this Circuit, "it is well-established that 'falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or *sponsorship*—such as by using BKC's Marks without permission—constitutes infringement.'" *Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984) (emphasis in original).

8. *Burger King Corp. v. Mason* reflects well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement. *See Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1566 (11th Cir.1986), *reh. denied,* 811 F.2d 612 (11th Cir.1987); *Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975); *In re Gainesville P–H Properties, Inc.,* 77 B.R. 285, 294 (M.D.Fla.1987).

█ 9. In determining whether Hall's use of the BKC Marks is likely to cause confusion, the following factors must be considered: (1) the type of plaintiff's trademark; (2) the similarity of design between plaintiff's marks and those used by defendant; (3) the similarity of the products; (4) the identity of retail outlets and purchasers; (5) the similarity of advertising media used; (6) defendant's alleged intent; and (7) proof of actual confusion. *See Dieter v. B & H Indus., Inc.,* 880 F.2d 322, 326 (11th Cir.1989); *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987).

10. Under each of these seven factors, BKC has established that Hall's continued use of the BKC Marks at her restaurant will result in the proscribed consumer confusion.

11. First, BKC's Marks are registered, incontestable and subject to a statutory presumption of validity under Sections 7 and 15 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1065. The BKC Marks are also highly fanciful, arbitrary in their selection and enjoy a distinctiveness and recognition which sets them apart as having BKC as their source. Such marks "are widely protected...." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259

(5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Varitronics Sys., Inc. v. Merlin Equip., Inc.,* 682 F.Supp. 1203, 1207 (1988).

12. Second, the Marks in question are identical since Hall continues to use the BKC Marks.

13. Third, " '[t]he greater the similarity between the products and services, the greater the likelihood of confusion.' " *John H. Harland Co. v. Clarke Checks, Inc., supra,* 711 F.2d at 976 (quoting *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.,* 628 F.2d 500, 505 (5th Cir.1980)). Here, the Marks identify identical products and services, since Hall continues to operate her restaurant as if she were a *bona fide* Burger King® franchisee.

14. Fourth, BKC and Hall sell their products and services through identical retail outlets—fast-food restaurants—to the same customers. *See John H. Harland Co. v. Clarke Checks, Inc., supra,* 711 F.2d at 976.

15. Fifth, the advertising of the parties' products and services is identical. Hall continues to realize the benefit of general Burger King® advertising.

16. Sixth, while proof of intentional infringement is not required to establish liability under the Lanham Act, such proof "is sufficient of itself for this Court to base a finding of 'likelihood of confusion.' " *Varitronics Sys., Inc. v. Merlin Equip., Inc., supra,* 682 F.Supp. at 1207 (citation omitted). Here, Hall clearly intends to pass off her restaurant as an authorized Burger King® restaurant by continuing to exploit BKC's Marks, despite knowledge that her contractual right to use those Marks has terminated. *E.g., Clayton v. Howard Johnson Franchise Sys. Inc.,* 730 F.Supp. 1553, 1559 (M.D.Fla.1988) ("after termination of the License Agreement [defendants'] refusal to choose a different name for the plaza and inn shows an *intent* to continue trading on the 'Howard Johnson's' mark") (emphasis added).

17. Finally, while actual confusion is not essential to a finding of likelihood of confusion, it is the " 'best evidence of likelihood of confusion.' " *John H. Harland Co. v. Clarke Checks, Inc., supra,* 711 F.2d at 978 (quoting *Amstar Corp. v. Domino's Pizza, Inc., supra,* 615 F.2d at 263). In this case, Hall's unauthorized use of the BKC Marks can have no result other than to cause actual confusion. Consumers could not possibly know that Hall's restaurant, which for all purposes appears to be a genuine Burger King® restaurant, is no longer affiliated with BKC.

18. In sum, the factors here establish an overwhelming likelihood of consumer confusion between Hall's restaurant and a genuine and authorized Burger King® restaurant. Hall's status as a "holdover" franchisee alone is dispositive of the infringement issue. Therefore, BKC has proven a substantial likelihood of success on the merits of its claims for trademark infringement and unfair competition under the Lanham Act.

19. While Hall does not dispute that her present use of the BKC Marks is without BKC's license or consent, she does contend that her franchise was wrongfully terminated since her alleged damage claims against BKC exceed the total of unpaid royalties and advertising contributions she refused to pay.

20. As a matter of law, however, a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks. Thus, while a terminated franchisee may seek money damages for any injuries resulting from the alleged wrongful termination of its franchise, it may not continue to use the franchisor's trademarks without authority in violation of law. *See Burger King Corp. v. Austin,* No. 90–0784–Civ–Hoeveler (S.D.Fla. Dec. 26, 1990); *Cle–Ware Rayco, Inc. v. Perlstein,* 401 F.Supp. 1231, 1234 (S.D.N.Y.1975).

21. Having chosen to stop her own performance under the parties' Franchise Agreement by refusing to pay her monthly royalties and advertising and sales promotion contributions to BKC, Hall herself effectively terminated her Franchise

Agreement with BKC. Having done so, Hall may pursue her damage claims against BKC, including her wrongful termination claim, but she may not continue to use the BKC Marks in the operation of her restaurant. In order to have preserved her right to continue to use the BKC Marks, Hall should have continued to pay her contractual royalties and advertising and sales promotion contributions to BKC. *See Burger King Corp. v. Austin, supra; Brosahd of Milwaukee, Inc. v. Dion Corp.,* [1989–1990 Transfer Binder] Bus. Franchise Guide (CCH) ¶ 9566, at 20,954 (E.D.Wis. Jan. 10, 1989).

■ 22. Hall's "wrongful termination" defense also falls outside the exclusive list of eight statutory defenses to a trademark infringement action based on an incontestable mark. *See* 15 U.S.C. § 1115(b); *United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134 (3d Cir.1981) (holding that trademark infringer's wrongful termination claim is simply "too far removed" from the Lanham Act infringement issue to constitute a defense). The statutorily enumerated defenses are the only permissible defenses to an action to enjoin the infringement of an incontestable trademark. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1184–85 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

■ 23. While Hall also asserts that BKC's alleged "unclean hands" bars it from obtaining injunctive relief, it is blackletter law that in a Lanham Act action the unclean hands alleged must relate to the plaintiff's own misuse of its Mark:

> A trademark plaintiff with unclean hands is one whose conduct *relative to his mark* has been so illegal or unconscionable that the court will refuse to hear him.

1A J. Gilson, *Trademark Protection and Practice* § 8.12[13][a], at 8–295 to 8–296 (1990 ed.) (emphasis added; footnote omitted); *see Worden v. California Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161, 164, 47 L.Ed. 282 (1903); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.,* 697 F.2d 1352,

1355 (11th Cir.1983). Hall has not alleged that BKC misused its own Marks prior to seeking injunctive relief and the affirmative defense of unclean hands, which is really another label for Hall's wrongful termination claim, is inapplicable.

24. As for Hall's claim that Bomarke is the franchisee of Restaurant No. 1813, Hall has admitted in three separate pleadings filed in this Court that she is the actual franchisee of Restaurant No. 1813. "[A] party is bound by the admissions in his pleadings." *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir.1983). "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Id.* (quoting *Hill v. Federal Trade Comm'n,* 124 F.2d 104, 106 (5th Cir.1941)).

25. In addition to her binding admissions, Hall received monthly statements from BKC listing her as the franchisee for a period of approximately eight years. And both BKC's Notice of Default and Notice of Termination were directed to Hall, and listed her as the individual franchisee of Restaurant No. 1813. Yet, Hall did not assert that Bomarke, and not she, was the franchisee of Restaurant No. 1813 until Bomarke filed a petition for bankruptcy on May 15, 1991, the day of the preliminary injunction hearing. All of the evidence, including Hall's own admissions, points to the conclusion that Hall is the individual franchisee of Restaurant No. 1813.

**B. Hall's Continuing Infringement Of The BKC Marks Will Irreparably Injure BKC**

26. Given the strong likelihood of consumer confusion and its likelihood of success on the merits, BKC has met its burden of demonstrating a substantial threat of irreparable injury and entitlement to an injunction *pendente lite. See E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, supra,* 756 F.2d at 1529–30 & n. 14; *Sundor Brands, Inc. v. Borden, Inc., supra,* 653 F.Supp. at 93; *Burger King*

*Corp. v. Charles Moore and Bruce Zindel,* No. 89–1023–Civ–Aronovitz, slip op. at 11 (S.D.Fla. Aug. 14, 1989) ("Plaintiff is not required to show irreparable injury in order to obtain a preliminary injunction if a prima facia case of infringement is made").

**C. The Threatened Injury To BKC Outweighs Any Threatened Harm To Hall**

27. The threatened harm to BKC outweighs any harm Hall may suffer from the grant of injunctive relief. As aptly noted in *American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 (2d Cir. 1978), "[o]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived. In the instant case, any harm suffered by Hall was brought about by her own actions in refusing to pay her royalties and advertising and sales promotion contributions to BKC. Hall simply has no equitable standing to complain of injury should her infringements be preliminarily enjoined.

**D. The Public Interest Will Be Furthered By The Issuance Of The Requested Relief**

28. Finally, public policy considerations mandate the requested relief.

In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation. *Sundor Brands, Inc. v. Borden, Inc., supra,* 653 F.Supp. at 93. The public interest can only be served by the immediate interdiction of Hall's use of the BKC Marks. Consumers who rely upon the BKC Marks in patronizing Hall's restaurant are being deceived into purchasing products under the mistaken belief that Hall is operating a genuine Burger King® restaurant, backed by BKC as its sponsor, and subject to BKC's stringent quality and service controls.

29. Granting injunctive relief thus will serve the public interest by preventing consumer confusion. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 44 (2d Cir.1986).

[T]he public will be protected and secure in their knowledge that when they patronize a restaurant which utilizes the Burger King trademarks, service marks and other logos, that restaurant is a properly licensed and authorized and franchised Burger King restaurant.

*Burger King Corp. v. Charles Moore and Bruce Zindel, supra,* slip op. at 13.

## CONCLUSION

Accordingly, plaintiff BKC's motion for a preliminary injunction is GRANTED, and it is ORDERED that:

Defendant Carole Hall, her agents, employees, representatives, and all persons acting in concert with her, or under her control, are hereby preliminarily enjoined from:

1. Using or displaying BKC's trademarks or service marks, or any other logos, symbols or trade dress of BKC, or any confusingly similar trademarks, service marks, logos, symbols or trade dress, in connection with the advertising, distribution, display or sale of any product or service; and

2. Making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendant or Defendant's restaurant is in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by BKC.

3. Within three (3) days of the date of this Order, Defendant shall (i) remove, at her own expense, from both outside and within Restaurant No. 1813, all signage, posters or other materials displaying, depicting or using the BKC Marks or identifying the restaurant as a Burger King® restaurant; and (ii) turn over to representatives of BKC all copies of BKC's MOD Manual, Operations Manual and any other printed materials containing BKC's operat-

ing instructions and business practices which Defendant used or possessed in connection with the operation of her terminated Burger King® restaurant.

4. Plaintiff shall post a bond in the amount of $75,000, as security.

5. Defendant is further instructed to file and serve within thirty days after entry of this preliminary injunction a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with this preliminary injunction.

DONE AND ORDERED.