**S & R CORPORATION;
and Steven Durst**

v.

**JIFFY LUBE INTERNATIONAL, INC., (a Nevada Corporation); Jiffy Lube International of Maryland, Inc.; W. James Hindman; and Edward F. Kelley, III.**

**Jiffy Lube International, Inc., Appellant.**

**Nos. 91–5614, 91–5887.**

United States Court of Appeals, Third Circuit.

Argued March 11, 1992.

Decided June 23, 1992.

John B. Kearney, Gino J. Benedetti (argued), Kenney & Kearney, Cherry Hill, N.J., for appellees.

Hugh J. Hutchison (argued), Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Kathryn A. Winterle, Montgomery, McCracken, Walker & Rhoads, Cherry Hill, N.J., for Jiffy Lube Intern., Inc.

Peter J. Klarfeld, Christine E. Lanzon, Tacie H. Yoon, Brownstein Zeidman and Schomer, Washington, D.C., Neil A. Simon, The Intern. Franchise Ass'n, Washington, D.C., for amicus curiae, The Intern. Franchise Ass'n.

Before: HUTCHINSON, ALITO and ROTH, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

This multi-faceted case began with a suit by Appellees S & R Corporation and Durst (collectively "Durst") against Appellant Jiffy Lube [1], claiming breach of a trademark license agreement. The present appeal arises from the district court's denial of Jiffy Lube's motion for a preliminary injunction to halt Durst's continued use of the Jiffy Lube trademark. Durst has continued to use this trademark despite formal termination of his franchise agreements in July of 1990. Because we find that Jiffy Lube has clearly established irreparable injury to its mark from Durst's non-consensual use, we will reverse the decision of the district court and will remand this case to that court with instructions to grant the injunction requested.

### I.

Durst and Jiffy Lube are parties to several franchise agreements which permit the S & R Corporation, under Durst's direction, to operate three Jiffy Lube enterprises in southern New Jersey. The agreements give Durst the right to use the Jiffy Lube trademark and benefit from collective advertising in exchange for royalty payments pegged to monthly sales.[2] Participation in the franchise is conditioned on compliance with detailed regulations concerning shop appearance, employee hiring and training, and financial management. Jiffy Lube, on its part, covenants to make regular inspections of each member station.

Durst stopped paying royalties to Jiffy Lube in "late 1988 or early 1989," but has continued to operate the three service centers under the Jiffy Lube name. Durst contends that he was justified in halting payment because Jiffy Lube breached some of its contractual obligations under the franchise agreement. Specifically, Durst alleges that Jiffy Lube failed to maintain the quality of its other franchises in the Philadelphia area, causing Durst's franchises to suffer. In response to Jiffy Lube's perceived inadequacies, Durst crafted his own rules about how the franchises should be run: he adopted a new training schedule and fleet billing policy, and erected a new non-conforming neon sign at his Egg Harbor center.

Durst filed suit against Jiffy Lube International in October of 1989, claiming breach of the franchise agreements. Concurrently, because of Durst's failure to pay royalties, Jiffy Lube instituted termination proceedings against his three franchises. On May 19, 1990, Durst requested preliminary injunctive relief to prevent the terminations. Argument was heard by the district court on the request at that time. However, it was not until January 29, 1991,

---

**1.** Appellants Jiffy Lube International, Inc., Jiffy Lube International of Maryland, Inc., W. James Hindman, Edward F. Kelley, III, Arnold Janofsky, Pennzoil Company and Pennzoil Products Company will be referred to collectively as "Jiffy Lube."

**2.** Durst and Jiffy Lube International of Maryland, Inc. are parties to three *lease* agreements for the premises upon which the Jiffy Lube service centers are operated. Durst stopped paying rent on the three properties in late 1988 or early 1989. Jiffy Lube Maryland currently has three cases pending in the New Jersey Superior Court to regain possession of the land.

that the district court entered a formal order, denying Durst's request for an injunction. In the meantime, in July 1990, Jiffy Lube had terminated Durst's three franchises because of the failure to pay royalties. Durst continues to operate the service centers under the Jiffy Lube mark, claiming that the termination was improper.

On May 10, 1991, four months after the district court denied Durst's preliminary injunction request, Jiffy Lube filed the current motion for preliminary injunctive relief, seeking to prevent Durst from further use of its trademark. Jiffy Lube claimed that Durst had violated §§ 32 and 43(a) of the Lanham Act, which respectively protect trademark owners against infringement and unfair competition. *See* 15 U.S.C. § 1114 (infringement),[3] § 1125 (unfair competition).[4] The district court denied Jiffy Lube's motion on July 1, 1991. The court found that the termination dispute between the parties precluded a determination of Jiffy Lube's likelihood of success on the merits, a threshold requirement for preliminary injunctive relief.[5] As part of the order denying injunctive relief, the court ordered that current royalties be paid into escrow until the termination dispute was resolved.

Jiffy Lube's motion for reconsideration was denied on October 8, 1991. Jiffy Lube appealed the district court's July 1, 1991,

and the October 8, 1991, orders. We consolidated the appeals for argument.

## II.

The district court had diversity and trademark jurisdiction in this case, and we have appellate jurisdiction over denials of injunctive relief. We review the denial of a request for injunctive relief for an abuse of discretion. *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 192 (3d Cir.1990). When ruling on a motion for preliminary injunctive relief, the district court must consider four factors: (1) the likelihood that the applicant will prevail on the merits at final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197–98 (3d Cir.1990). *See Opticians,* 920 F.2d at 191–92, *citing Bill Blass, Ltd. v. Saz Corp.,* 751 F.2d 152, 154 (3d Cir.1984). All four factors should favor preliminary relief before the injunction will issue. *Id.* at 192. In this case, the legal dispute centers on the first factor.

Both Durst and Jiffy Lube allege that they are entitled to exercise their rights under the contract pending the resolution

**3.** Section 32 provides:
Remedies; infringement; innocent infringement by printers and publishers
(1) Any person who shall, without the consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising ... in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; [ ]

. . . . .

shall be liable in a civil action by the registrant[.]
15 U.S.C.A. § 1114 (West 1963 & Supp.1992).

**4.** Section 43(a) provides:
False designations of origin and false descriptions forbidden
(a) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or

any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, [ ]

. . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C.A. § 1125 (West Supp.1992).

**5.** We note some inconsistency in the court's denial of Durst's request for preliminary injunctive relief, which permitted Jiffy Lube to terminate his franchises, and its later denial of Jiffy Lube's request to make the terminations effective.

of their termination dispute. Durst claims that he should be able to continue using the Jiffy Lube trademark (in his admittedly innovative way) because Jiffy Lube's negligent supervision caused business to drop off and limited his ability to pay royalties. Jiffy Lube contends that it has the right under the contract to terminate the franchise because of Durst's failure to pay royalties; that this right is not affected by any alleged breaches on its part; and that Durst's unauthorized usage of the Jiffy Lube mark inflicts irreparable harm on the Jiffy Lube name.

The district court denied Jiffy Lube's request for a preliminary injunction. After reviewing the cases cited by the parties and by amicus curiae International Franchise Association, we find that the district court abused its discretion in denying this relief.

█ Initially, we must determine whether the termination dispute prevents us from granting Jiffy Lube's request for preliminary injunctive relief. We hold that it does not, although Durst argues, and the district court found, to the contrary.

The district court and Durst incorrectly rely on a decision from this circuit, *Aamco Transmissions, Inc. v. Smith*, 756 F.Supp. 225 (E.D.Pa.1991), as authority for the proposition that preliminary injunctive relief is not appropriate where concerns linger about contract breach. The *Aamco* court found that the non-federal unfair competition claims alleged by the plaintiffs could not be decided without resolution of the underlying contract dispute, which the court declined to do.

As Durst reads *Aamco*, the court found it necessary that the termination issue await trial. In fact, the court did not decide the termination issue because it concluded that it did not have jurisdiction. The court found that there was no diversity of citizenship between the parties and that the plaintiff had failed to allege a *federal* trademark infringement claim under 15 U.S.C. § 1114, which section's "infringement per se" rule would have put the parties and the termination issue properly before the court. *Aamco*, 756 F.Supp. at 227. Thus, the court's contract language is only dicta. *Aamco* does not help Durst in the present case, where we have diversity jurisdiction and the plaintiff has alleged infringement of federal rights under the Lanham Act.

█ We find that the district court here erred in failing to address the termination dispute. Though there are no cases directly on point in this circuit, we hold by reference to contract and trademark principles that a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act. Thus, Jiffy Lube will merit preliminary injunctive relief if it can adduce sufficient facts indicating that its termination of Durst's franchises was proper.

### A.

█ Jiffy Lube must first demonstrate that its claim of damage from unauthorized trademark use is likely to succeed at trial. Under § 43(a) of the Lanham Act, this is possible if Durst's use of Jiffy Lube's valid trademarks is "likely to create confusion concerning the origin of the goods or services," *Opticians*, 920 F.2d at 192. To prevail on an infringement claim under § 32 of the Act, Jiffy Lube must demonstrate as well that Durst's use of the marks was unauthorized. *See United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 137 (3d Cir.1981).

We have held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *See Opticians*, 920 F.2d at 195, *citing Jaycees*, 639 F.2d at 142. There is no question in this case that Durst and Jiffy Lube are using the same legally protectable trademark, owned by Jiffy Lube, and that their concurrent use is highly likely to cause consumer confusion about Durst's affiliation with the franchise. Jiffy Lube has met its burden under section 43(a).

It is also apparent that Durst's continued use of the trademark was unauthorized, in violation of § 32. *See* 15 U.S.C.A. § 1114 (holding liable "Any person who shall, *without the consent of the registrant*—(a) use in commerce any reproduction ... of a registered mark ... in connection with which such use is likely to cause confusion.") (emphasis added). Jiffy Lube formally terminated Durst's License Agreement on July 16, 1990. Durst was permitted one of two responses to the termination, and he did not pursue either option.

Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits. Other courts have noted this exact dilemma in resolving franchise termination disputes. In *Burger King v. Austin*, Bus.Fran. Guide (CCH) ¶ 9788 at 22,069 (S.D.Fla. Dec. 26, 1990), defendants operated two Burger King franchises in Georgia. They failed to make royalty payments and were subsequently terminated, but continued to operate the franchises under the Burger King name. The defendants alleged that Burger King's earlier failure to give them real estate assistance relieved them of the duty to pay royalties. Burger King sued under the trademark infringement section of the Lanham Act, and in contract. In considering Burger King's request for an injunction, the court noted:

> When one party to a contract materially breaches his duties under the contract, the other party may proceed in one of two ways. He can either consider the contract terminated and sue for total breach, or he can continue his performance and sue for partial breach. As Defendants have ceased paying the amounts due under the franchise and lease agreements, they seem to have chosen the first option of considering [Plaintiff's] alleged breach a total breach. Thus, Defendants themselves appear to

have terminated their contractual relationship with [Plaintiff]. Although Defendants may prevail on their breach of contract claims, thus excusing them from paying the amounts currently due and perhaps entitling them to further damages, the Court cannot see how this separate cause of action entitles them to continued rights under the franchise agreement. *In order to have preserved their right to recover for the alleged breaches and to continue to use the [Plaintiff's] trademark, Defendants should have continued to pay royalties, advertising expenses and rent.*

*Austin*, at 22,069 (emphasis added) (citations omitted). Continued use of the trademark under these circumstances amounts to infringement under the Lanham Act.

Accordingly, when such a scenario occurs, courts have been willing to enjoin the franchisee's continued receipt of contract benefits. In *Austin, supra*, the district court held that the risk of consumer confusion was high where a terminated franchisee continued to use the former franchisor's trademark, *id.* at 22,069, and that the plaintiff had therefore shown a substantial likelihood of success on its infringement claims. Injunctive relief was granted. The court recognized that the franchisor's right to terminate existed independently of the franchisee's claims. *See Berg v. Copeland Enterprises, Inc.*, Bus. Fran. Guide (CCH) ¶ 9848 at 22,328 (S.D.Fla. Mar. 4, 1991) ("Evidence at the preliminary injunction hearing should necessarily be limited to that which is relevant to the termination of plaintiffs' franchise agreements. It does not appear that evidence related to the plaintiffs' affirmative claims against defendant is relevant to whether the franchise may be terminated for non-payment of fees.").

Injunctive relief was also granted, under similar circumstances, in *Burger King Corp. v. Lee*, 766 F.Supp. 1149 (S.D.Fla. 1991) (failure to make royalty payments resulted in termination; post-termination use of trademark enjoined despite franchisee claims of breach) and in *Burger King Corp. v. Hall*, 770 F.Supp. 633, Bus.

Fran. Guide (CCH) ¶ 9840 at 22,322–23 (S.D.Fla. May 21, 1991) (franchisee failed to pay royalties; post-termination use of trademark enjoined; no indication of whether Hall had counter-claimed for breach).[6] In fact, in *Hall*, the court reiterated the contract claim in *Austin* that "[a]s a matter of law, ... a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks." *Hall* at 22,322.

On similar facts but on motions for summary judgment, the Eastern District of Wisconsin also decided that termination rights gave the franchisor remedies distinct from franchisee claims. In *Brosahd of Milwaukee, Inc. v. Dion Corp.*, Bus.Fran. Guide (CCH) ¶ 9566 (E.D.Wis. Jan. 10, 1989), a franchisee-plaintiff challenged the termination of its franchise agreement. The franchisee accused the franchisor of mismanagement of the franchise. In justifying the termination, the franchisor countered that the franchisee had not paid royalties for several years, in direct violation of the agreement. In granting summary judgment in favor of the franchisor, the court noted that "[e]ven if [the franchisor] had breached the franchise agreement, plaintiffs were not entitled to continue using the 'Supercuts' name in accordance with the agreement without performing the reciprocal obligations of the agreement." *Id.* at 20,954. Each of the above cases is strong support for Jiffy Lube's position.

 Durst argues that these cases are distinguishable because in none of them did the franchisee claim pre-termination breach by the franchisor. This argument does not, however, affect our conclusion that the franchisor has the independent ability to determine whether termination is appropriate. Where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act. Rather, pre-termination disputes affect the issue of damages.[7]

Durst also cites *Arthur Guiness & Sons, PLC v. Sterling Pub. Co.*, 732 F.2d 1095 (2d Cir.1984), in support of denying injunctive relief. The Court of Appeals for the Second Circuit denied injunctive relief to a licensor (Guiness) where it could not be shown that a violation of the license's terms was the breach of an important obligation. *Guiness*, 732 F.2d at 1101. Unlike the agreement in *Guiness*, however, the Jiffy Lube–Durst arrangement specifically provided that failure to pay royalties could result in termination. *Guiness* is not persuasive here.

In sum, Durst has done exactly what contract law forbids. Feeling that Jiffy Lube had violated its duty to him, Durst stopped making royalty payments, but he continued to operate the service centers under the Jiffy Lube name. The Durst–Jiffy Lube franchise agreement gives Jiffy Lube the right to terminate the agreement upon the occurrence of, *inter alia*, "fail[ure] to make payments of royalties or any monies owing to Jiffy Lube in any twelve (12) month period after [Durst] has already received thirty (30) days written notice that such a failure has already occurred." (Franchise Agreement § 20.B(4)). Durst did not pay royalties after early 1989; Jiffy Lube gave Durst 60 days to cure the default, and when Durst did not respond the franchises were terminated. Under the rationale of *Austin* and *Hall*, Durst still may have a legitimate claim for damages, but he does not have the right to continue using the trademark as an infring-

---

6. Burger King eventually secured permanent injunctive relief in the *Lee* litigation. *See Burger King Corp. v. Lee,* Bus.Fran. Guide (CCH) ¶ 9906 at 22,637 (S.D.Fla. July 30, 1991).

7. Durst does not raise an unclean hands defense to his failure to pay royalties under the License Agreement with Jiffy Lube. We note, however, that the defense would have been unsuccessful if alleged. To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff. *See Castle v. Cohen,* 676 F.Supp. 620, 627 (E.D.Pa.1987), *aff'd in part and vacated in part on other grounds,* 840 F.2d 173 (3d Cir. 1988). None of these elements was alleged in this case. At best Durst contends merely that Jiffy Lube was negligent in failing to monitor local franchise quality.

er.[8] We conclude that Jiffy Lube has adequately demonstrated a likelihood of success on the merits of its trademark infringement claim.

### B.

■ The second factor a district court must consider before granting a preliminary injunction is the extent to which the plaintiff will suffer irreparable injury if such relief is denied. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Opticians*, 920 F.2d at 195. Lack of control amounts to irreparable injury regardless of allegations that the infringer is putting the mark to better use. *Id.* at 195–96 (collecting citations). Irreparable injury can also be based on the possibility of confusion. *Id.* at 196. Finally, and most importantly for this case, trademark infringement amounts to irreparable injury as a matter of law. *See id.*, citing *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.1988) (damages "caused by trademark infringement are by their very nature irreparable").

Because we have concluded that Jiffy Lube is likely to prove at trial that Durst is infringing its trademark, we find that Jiffy Lube has *a fortiori* alleged irreparable injury.

■ Even if we were not to conclude that Durst were an infringer, we would

find that Jiffy Lube had shown irreparable injury by the lack of control over its mark. Durst admitted to being "innovative" in the administration of his three service centers. He developed new techniques designed to improve the Jiffy Lube image, though he knew these methods deviated from the franchise norm. These actions, taken outside the terms of the License Agreement, were an independent source of harm to the Jiffy Lube name.

Durst notes that his service centers were ranked numbers one, four and thirteen in a survey taken at the time royalty payments stopped. Under our decision in *Opticians*, however, Durst's "innovative" maneuvers amount to irreparable injury even if, as Durst argues, the trademark was being put to better use. *See Opticians*, 920 F.2d at 195–96.[9]

Durst alternatively contends that Jiffy Lube's delay in seeking injunctive relief eliminates the possibility of irreparable injury. Yet, Durst's assessment of delay is much weaker than Jiffy Lube's explanation for its timing. Jiffy Lube was apparently unable to file for injunctive relief under the Lanham Act until it was certain that Durst was infringing. This certainty did not arise until January 29, 1991, when the district court entered an order denying *Durst's* request for injunctive relief from Jiffy Lube's proposed terminations. Jiffy Lube's motion in this case was filed 3½ months later. We find this to be a reason-

---

**8.** We find this conclusion proper even though Durst is currently paying royalties into escrow by order of the district court.

**9.** We also note the extreme inconsistency between Durst's argument that his service centers were successful, and thus not causing Jiffy Lube any injury, and his contention that Jiffy Lube's negligent supervision led to such a business decline that Durst was unable to pay royalties. *Compare* Appellees' Brief at 13 (at time of motion for preliminary injunction, Durst's stores were ranked 1, 4 and 13 respectively in sales volume of a 65–store market) *with* Appellees' Brief at 14, 40 (Jiffy Lube refused to heed Durst's warnings about the quick lube market; "those warnings became reality and Durst's business slumped badly and made him unable to pay royalties if he was to keep his business afloat").

One court faced with a similar "inability to pay" argument in the context of a franchise termination dispute refused to admit evidence of the franchisee's impaired ability to pay its fees under the contract. The court found that the terms of the agreement still governed: "With respect to plaintiffs' earning *less* revenue because of [the franchisor's] alleged breaches and thus having reduced ability to pay fees to [the franchisor], we note that plaintiffs are required to pay eight percent of *whatever* revenues are in fact received." *Berg v. Copeland Enterprises, Inc.*, Bus.Fran. Guide (CCH) ¶ 9848 at 22,350 (S.D.Fla. Mar. 4, 1991) (emphasis added). Durst's royalty payments are similarly based on a percentage of revenues received. Both Durst and the franchisee in *Berg* managed their businesses profitably; nothing excused either of them from paying some amount under the respective agreements.

able delay. We find this to be a reasonable delay. Durst's allegations of a two-year gap are disingenuous.

## C.

██ Jiffy Lube must also show that its benefits from a preliminary injunction are not outweighed by irreparable injury to Durst. Though Durst admittedly presents a sympathetic position, he has brought much of the difficulties of which he complains upon himself. He chose to stop paying royalties, for example. *See Opticians*, 920 F.2d at 197 (party "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.") In choosing to stop his own performance under the contract, he effectively terminated the franchise agreement. *Cf. Austin*, ¶ 9788 at 22,070. Durst is certainly harmed by the threat of loss of his franchise, but his self-inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark. Durst is not prevented from seeking damages, but he has not established the right to continue using the trademark. *Id.*

## D.

██ Jiffy Lube must finally demonstrate that issuance of a preliminary injunction serves the public interest. In a trademark case, the public interest is "most often a synonym for the right of the public not to be deceived or confused." *Opticians*, 920 F.2d at 197 (collecting citations). Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest. *See id.* at 197–98. In this respect, harm to the public interest is much like irreparable injury to the trademark owner. Durst, who is likely to be found an infringer at trial, is thus likely, if not certainly, causing confusion among Jiffy Lube patrons. In-

junctive relief would be in the public's interest.

## III.

We find that Jiffy Lube has satisfied all four factors for a preliminary injunction under our decision in *Opticians, supra,* and that the district court abused its discretion in denying the requested relief. The district court refused, mistakenly, to address the propriety of Jiffy Lube's termination of the franchise agreements. With Durst's use of the trademark thus not clearly deemed "unauthorized" in the district court, Jiffy Lube was not able to prove a likelihood of success on the merits of its injury claim. Though the court relied on dicta in *Aamco*, we find the *Brosahd, Austin,* and *Hall* opinions persuasive. Under standard contract principles, Durst's use of Jiffy Lube's trademark despite his failure to pay royalties was not an acceptable response to Jiffy Lube's alleged negligent supervision of its other franchisees. Jiffy Lube thus legitimately regarded Durst's behavior as a violation of the franchise agreement, justifying termination. Durst's post-termination use of the Jiffy Lube name was unauthorized, constituting injury to Jiffy Lube not outweighed by Durst's potential loss of livelihood. This court will reverse the district court's order, and will remand with instructions to grant Jiffy Lube's request for preliminary injunctive relief.[10]

---

**10.** We note that another court in this circuit recently reached a similar conclusion on nearly identical facts. The decision is unpublished. *See Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.,* No. 91–6818, 1992 WL 13682, 1992 U.S. Dist. LEXIS 788 (E.D.Pa. Jan. 27, 1992).