[Civ. No. 24444. Third Dist. Dec. 6, 1985.]

LEROY GLEAVES et al., Plaintiffs and Appellants, v.
ROBBIE WATERS, as Sheriff, etc., et al., Defendants and Respondents.

COUNSEL

Miller & Rolfe and Duane C. Miller for Plaintiffs and Appellants.

L. B. Elam, County Counsel, Melvyn W. Price, Deputy County Counsel, John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, Roderick E. Walston and Charles W. Getz IV, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—In this appeal we decide that, absent exigent circumstances, the need summarily to abate a public nuisance does not of itself justify state invasion of legitimate privacy interests without consent or a warrant.

Plaintiffs petitioned the superior court for a writ of prohibition to restrain the execution of administrative inspection warrants directed to their properties which did not comply with the governing statute. (Code Civ. Proc., § 1822.50 et seq.) The trial court declared the issue moot because, although defective, the warrants had expired and an ancillary contempt citation against plaintiff Gleaves had been dismissed. Plaintiffs then amended their petition to seek injunctive, mandatory, and declaratory relief in respect to future governmental intrusions. The amended petition contested the authority of state agricultural control officers assisted by Sacramento County Sheriff's deputies to enter, without consent or a valid warrant, plaintiffs' private yards in order to abate a declared public nuisance, namely the Japanese beetle.

The trial court denied plaintiffs' application for a preliminary injunction after making the following findings: "1. State of California has determined that there is an infestation of Japanese Beetles in the County of Sacramento. The presence of the Japanese Beetle thus has been determined to be a nuisance subject to all laws and remedies relating to the prevention of public nuisances. [¶] 2. State proposes to apply chemicals on private residential property in the infested area to summarily abate the Japanese Beetle nuisance. This proposed course of action would require entry into enclosed back yards, but not into the homes of the owners. [¶] 3. This court finds that the application of chemicals on private residential property does not constitute an inspection requiring an inspection warrant. [¶] 4. Based on the foregoing, it is the judgment of this court that summary abatement can occur without a prior court order or warrant."

Plaintiffs appeal from the denial of the preliminary injunction.

■ The granting or denial of a preliminary injunction rests in the sound discretion of the trial court and may not be disturbed on appeal absent an abuse of discretion. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121]; *California Satellite Systems, Inc.* v. *Nichols* (1985) 170 Cal.App.3d 56, 63 [216 Cal.Rptr. 180].) ■ Where the evidence with respect to the right to a preliminary injunction is conflict-

ing, the reviewing court must "interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order." (*Volpicelli* v. *Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal.App.3d 242, 247 [167 Cal.Rptr. 610].)

An injunction is an extraordinary remedy which requires a showing of threatened irreparable injury and the inadequacy of other remedies at law. (Code Civ. Proc., § 526.) Plaintiffs' entitlement to injunctive relief is dependent upon some showing they are in immediate danger of sustaining real injury as the result of the challenged official conduct. (*Uptown Enterprises* v. *Strand* (1961) 195 Cal.App.2d 45, 52 [15 Cal.Rptr. 486]; see also *Los Angeles* v. *Lyons* (1983) 461 U.S. 95, 102-103 [75 L.Ed.2d 675, 684-685, 103 S.Ct. 1660].) Past exposure to illegal conduct does not itself establish a right to injunctive relief; the prospect of future injury is gauged by the continuing nature of the past illegal conduct or the likelihood it will be repeated. (*Uptown Enterprises,* at p. 52; see also *Rosicrucian Fellow* v. *Rosicrucian etc. Ch.* (1952) 39 Cal.2d 121, 144 [245 P.2d 481]; *Los Angeles* v. *Lyons, supra,* 461 U.S. at p. 102 [75 L.Ed.2d at p. 684].)

The parties do not dispute that the Japanese beetle constitutes a public nuisance. A member of the scarab beetle family, the Japanese beetle has the capacity rapidly to generate overwhelming numbers. It is a general feeder which attacks over 250 plant varieties, including valuable ornamental plants and food crops such as corn, grapes, and stone fruits.

Pursuant to statutory authority (Food & Agr. Code, §§ 407, 5322, 5401), in 1983 the Director of the State Department of Food and Agriculture proclaimed Sacramento County an eradication area known to be infested with the Japanese beetle. (Cal. Admin. Code, tit. 3, § 3589.) At the time they filed their amended petition, plaintiffs' homes were within the targeted area of actual infestation and their yards were scheduled to be treated with a series of pesticide applications.

Plaintiffs do not contest the Department of Food and Agriculture's authority summarily to abate a public nuisance. Rather, they maintain that abatement officers cannot enter their private, enclosed yards without first obtaining consent or a warrant. Defendants rejoin that, once a public nuisance has been established and declared, summary abatement measures may be taken under the state's police power without an administrative warrant authorizing entry into plaintiffs' private yards. Defendants' position is predicated on alternative theories that (1) summary abatement of a declared public nuisance does not constitute a search in any constitutional sense or, if it does, (2) there are exigent circumstances here which justify the intru-

sion into plaintiffs' private yards without a warrant. We shall reject each of defendants' arguments in turn.

■ Underlying defendants' position is the assertion that treatment of the infested area with pesticides constitutes "abatement" as distinguished from "inspection." The significance of this distinction resides in the fact the statutory scheme for administrative warrants provides only for inspection warrants. Code of Civil Procedure section 1822.50 authorizes issuance of "An inspection warrant . . . signed by a judge . . . directed to a state or local official, commanding him to conduct any inspection required or authorized by state or local law or regulation relating to building, fire, safety, plumbing, electrical, health, labor or zoning."

However, the record shows that where consent to enter cannot be obtained, inspection and abatement activities are conducted at the same time. Approximately two weeks prior to treatment defendants undertake to inspect the affected properties to identify the presence of "host material" and to plan for safety measures ("e.g. removal of dog dishes, children's toys, laundry, etc."); where pretreatment inspection occurs, it is conducted with the consent of the property owner; where consent is refused or cannot otherwise be obtained, defendants obtain an inspection warrant authorizing entry into the property to inspect; all inspections carried out pursuant to warrants occur *simultaneously* with the actual treatment. The trial court's finding "that the application of chemicals on private residential property does not constitute an inspection requiring an inspection warrant" may be correct as a generalization. However, because the state relies on inspection warrants simultaneously to enter, inspect *and* abate, it is irrelevant to the disposition of this case.

■ Quite apart from the inspection/abatement quibble, we disagree with the trial court's conclusion that Fourth Amendment protection against unreasonable governmental intrusion upon individual privacy is not implicated under the circumstances of this case. Entries onto private property by administrative functionaries of the government, like searches pursuant to a criminal investigation, are governed by the warrant requirement of the Fourth Amendment. (*Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727]; *Michigan* v. *Tyler* (1978) 436 U.S. 499, 504-508 [56 L.Ed.2d 486, 494-498, 98 S.Ct. 1942]; *Michigan* v. *Clifford* (1984) 464 U.S. 287, 292 [78 L.Ed.2d 477, 483, 104 S.Ct. 641].) Thus, where there is a legitimate privacy interest in the property entered, a warrantless and nonconsensual entry is permissible only where exigent circumstances justify the intrusion. (*Michigan* v. *Clifford, supra,* 464 U.S. at p. 292 [78 L.Ed.2d at p. 483].) Depending on the circumstances, a reasonable expectation of privacy may be recognized in certain of the areas surrounding

one's home which are, perforce, protected from nonexigent warrantless intrusions by governmental officers. (See generally, Witkin, Cal. Criminal Procedure (1985 supp., pt. 2, ch. IX) Exclusion of Illegally Obtained Evidence, § 921, pp. 120-121.)

"'A "search," as that term is used in the Fourth Amendment . . . and in our own Constitution, implies some exploratory investigation or an invasion and a quest, a looking for or seeking out [citation].'" (*People* v. *Haugland* (1981) 115 Cal.App.3d 248, 257 [171 Cal.Rptr. 237], quoting *People* v. *Ammons* (1980) 103 Cal.App.3d 20, 26 [162 Cal.Rptr. 772].) "The essence of a search is the viewing of that which was . . . intended to be private or hidden, . . ." (*People* v. *Holloway* (1964) 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325].) "Succinctly stated, a search within the meaning of the Fourth Amendment occurs whenever one's reasonable expectation of privacy is violated by unreasonable governmental intrusion." (*People* v. *Smith* (1977) 67 Cal.App.3d 638, 651 [136 Cal.Rptr. 764]; see also *Haugland,* at p. 257; *Katz* v. *United States* (1967) 389 U.S. 347, 353 [19 L.Ed.2d 576, 583, 88 S.Ct. 507]; *Oliver* v. *United States* (1984) 466 U.S. 170, 177, 183 [80 L.Ed.2d 214, 223, 227, 104 S.Ct. 1735].) Whether the governmental purpose for the invasion here is to abate a public nuisance by the application of chemicals or to perform a routine inspection, the privacy interests of homeowners are no less affected. The governing principle is explained in *Michigan* v. *Tyler, supra:* "The decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime. As this Court stated in *Camara* v. *Municipal Court,* 387 U.S. 523, 528 [18 L.Ed.2d 930, 87 S.Ct. 1727], the 'basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' The officials may be health, fire, or building inspectors. *Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection.* The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. *See* v. *Seattle,* 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]; *Marshall* v. *Barlow's Inc., ante,* at 311-313 [56 L.Ed.2d 305, 98 S.Ct. 1816]. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment." (436 U.S. at pp. 504-505 [56 L.Ed.2d at p. 495], italics added.)

Accordingly, we hold that in the absence of consent or exigent circumstances, government officials engaged in the abatement of a public nuisance must have a warrant to enter any private property where such entry would invade a constitutionally protected privacy interest. We do not mean to suggest or imply that the warrant requirement extends to all entries onto

private property for nuisance abatement purposes, only those which infringe upon constitutionally recognized expectations of privacy.

Defendants' alternative position is that exigent circumstances excuse the necessity for a warrant. ■ For Fourth Amendment purposes, exigency turns on "whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." (*Camara, supra,* 387 U.S. at p. 533 [18 L.Ed.2d at p. 938]; *People* v. *Hyde* (1974) 12 Cal.3d 158, 168 [115 Cal.Rptr. 358, 524 P.2d 830].) Defendants cite uncontradicted evidence presented to the trial court that it was of critical importance, in order effectively to eradicate the Japanese beetle in the 4,000 properties located in the infested area, to maintain a rigorous treatment schedule; if the required intervals between repeated pesticide applications had to be extended in order to secure a warrant, the treatment program would have to begin anew and the beetle might spread to unaffected areas as well; the required interval between treatments is 10-14 days.

The burden of obtaining a warrant may vary according to the statutory procedure, if any, with which administrative officials must comply. The constitutional requirement of a warrant is not of course dependent upon the enactment by the Legislature of an implementary procedure. Indeed, we are unaware of any statutory procedure for issuance of a warrant authorizing entry into private property specifically to abate a public nuisance. However, it is the prospective invasion of constitutionally protected interests by an entry onto property and not the purpose of the entry which calls forth the warrant requirement. Here the evidence shows that all nonconsensual entries onto private property were for the purposes "simultaneously" of inspection and treatment. Since there is a statutory procedure for issuance of warrants of inspection, and the state utilizes that procedure as authority to enter in order to inspect and treat the affected properties, we shall examine that scheme in dealing with the defendants' claim of exigency.

During the relevant events here and through the time of trial, Code of Civil Procedure section 1822.54 required that all inspection warrants issued thereunder particularly describe "each place, dwelling, structure, premises, or vehicle to be inspected . . . ." Section 1822.51 required that the affidavit in support of the warrant "contain either a statement that consent to inspect has been sought and refused or facts or circumstances reasonably justifying the failure to seek such consent." Section 1822.56 provided that entry under the warrant "shall not be made by means of forcible entry" except where expressly authorized on a showing of good cause.

Code of Civil Procedure section 1822.59, enacted after trial of this matter, now provides a more expeditious procedure for obtaining and executing

inspection warrants in connection with "an animal or plant pest or disease eradication effort." Effective January 1, 1985 (Stats. 1984, ch. 476, § 4), the new section provides: "(a) Notwithstanding the provisions of Section 1822.54, for purposes of an animal or plant pest or disease eradication effort pursuant to Division 4 (commencing with Section 5001) or Division 5 (commencing with Section 9101) of the Food and Agricultural Code, the judge may issue a warrant under the requirements of this title describing a specified geographic area to be inspected by authorized personnel of the Department of Food and Agriculture. [¶] (b) A warrant issued pursuant to this section may only authorize the inspection of the exterior of places, dwellings, structures, premises or vehicles, and only in areas urban in character. The warrant shall state the geographical area which it covers and the purpose of and limitations on the inspection. [¶] (c) A warrant may be issued pursuant to this section whether or not the property owners in the area have refused to consent to the inspection. A peace officer may use reasonable force to enter a property to be inspected if so authorized by the warrant." A legislative finding accompanying the enactment of section 1822.59 states "that quick action is often required to eradicate animal or plant pests or diseases in urban as well as rural areas, and that the expeditious issuance of inspection warrants may be necessary for that purpose. It is the intent of the Legislature that these warrants be issued pursuant to the provisions of Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure, and that nothing in this act shall be construed as attempting to modify any requirement in existing law that a particular warrant be issued only on a showing of probable cause." (Stats. 1984, ch. 476, § 1.)

█ Since relief by injunction operates in futuro, "the right to such relief must be determined under the law which exists at the time of an appellate court's decision." (*California Satellite Systems,* 170 Cal.App.3d at p. 66; see also *White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222].)

In view of the new, untried enactment applicable to these circumstances, it is premature to speculate as to what combination of circumstances in the future would be required to excuse state agricultural officials from complying with the less burdensome requirements for obtaining and executing an inspection warrant in connection with pest eradication efforts.

█ Plaintiffs have failed to make the necessary threshold showing they are in immediate danger of sustaining some real injury as a result of state efforts to eradicate the Japanese beetle. Absent such a showing, we shall not disturb the trial court's exercise of discretion in denying plaintiffs injunctive relief.

The order denying the preliminary injunction is affirmed.

Blease, J., and Sparks, J., concurred.