[No. G022514. Fourth Dist., Div. Three. May 19, 1999.]

LYDIA FLAHIVE, Plaintiff and Appellant, v.
CITY OF DANA POINT et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), parts II and III of this opinion (except the dispositional paragraph at the end of part III) are not published, as they do not meet the standards for publication.

242

COUNSEL

Dan Reising for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, Edwin J. Richards, Jeffrey D. Farrow and Mark B. Aldrich for Defendants and Respondents.

OPINION

SEYMOUR, J.*—Lydia Flahive appeals the judgment in her action for negligence, trespass, and inverse condemnation against the City of Dana Point (the City) and West Coast Land-Clearing (West Coast), contending: (1) the warrant used to abate a nuisance on her property was void because the issuing court lacked subject matter jurisdiction, the court did not have jurisdiction over Flahive's property, and the warrant was issued by a commissioner; (2) the trial court should have found liability under the California

---

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Tort Claims Act; and (3) the court should have awarded damages for inverse condemnation.[1] We affirm.

Flahive converted half of her garage into two studio apartments, without obtaining permits, a violation of the Dana Point Municipal Code.[2] The City sent a number of letters and attempted to meet with Flahive to remedy the problem, but to no avail.

The City scheduled a nuisance abatement hearing. Flahive received notice of the hearing but did not attend. The City presented testimony and documentary evidence, and the hearing officer, a retired judge, ruled the apartments were a nuisance. The officer ordered Flahive to allow city staff to inspect the premises or to produce valid permits authorizing the apartments. Alternatively, Flahive was given 60 days to obtain such permits or return the garage to its original state. If Flahive did not comply, the City was authorized to abate the nuisance itself.

When Flahive had not complied several months later, the City sought a nuisance abatement warrant from the municipal court. Flahive received notice of the hearing and attended. The commissioner found good cause and issued a warrant ordering the City to abate the nuisance. After the City notified Flahive's tenants of the imminent abatement and they moved out, West Coast, whom the City had hired, entered the property and removed the apartments, restoring the garage.

Flahive sued the City and West Coast. The case was tried on causes of action for negligence and trespass against West Coast and inverse condemnation against the City. Judgment was entered for the defendants.

I

Flahive contends the warrant used to abate a nuisance on her property was void because the issuing court lacked subject matter jurisdiction and jurisdiction over the property, and the warrant was issued by a commissioner. We

[1]Flahive's brief contains an "argument" entitled: "Plaintiff's claim is for the physical taking and destroying of her property. It is not a challenge to the city's ordinances or regulations." Because this statement was apparently intended as a clarification, and Flahive's discussion under it does not contain a legal point distinct from her other arguments, we merely note it without considering it as a separate contention.

[2]Flahive asserts, without citation to the record, she was issued a building permit and certificate of occupancy for a single-family residence with a garage. Even if this is so, it says nothing about the garage apartments. Flahive disputes neither that the apartments violated Dana Point Municipal Code section 7-9-145.2(c)(1) (adopted by reference from the codified ordinances of the County of Orange), which prohibits using residential off-street parking facilities for other purposes, nor that section 6.14.002 of that code makes such conduct a nuisance.

find the court had jurisdiction, and Flahive waived any complaint about the commissioner by stipulating to have him hear the matter.

■ Flahive's argument regarding the purported lack of subject matter jurisdiction is premised on her assumption the warrant application was a de facto action in equity for an injunction, over which the superior court has exclusive jurisdiction. (Cal. Const., art. VI, § 10 [superior court has civil jurisdiction in all cases except those given by statute to other courts]; Code Civ. Proc., § 86, subds. (a)(8) & (b) [giving limited equity jurisdiction not involving mandatory injunctions]; see 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, §§ 211-212, pp. 279-280; 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 278, p. 221.)[3] She errs in her premise. The City did not proceed by way of a judicial action; it used abatement.

A city council may, by ordinance, declare what constitutes a nuisance (Gov. Code, § 38771), and may provide for summary abatement of the nuisance at the expense of the person who created it. (Gov. Code, § 38773.) The Dana Point Municipal Code prohibits converting off-street residential parking facilities to other uses, and a violation of that provision constitutes a nuisance. (Dana Point Mun. Code, §§ 7-9-145(c)(1), 6.14.002(a).)[4]

The type of nuisance created by a violation of the provision is a public nuisance. Civil Code section 3480 defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . ." The obvious purpose behind the Dana Point prohibition against converting off-street parking facilities is to prevent the proliferation of vehicles parked on the street, which would create an eyesore and potential traffic congestion and dangerous conditions for the public (see Dana Point Mun. Code, § 7-9-145.1), and to limit density increases in violation of the zoning laws.

Civil Code section 3491 provides three remedies for a public nuisance: (1) a criminal proceeding; (2) a civil action; or (3) abatement. Except for instances implicating certain constitutional considerations, such as nuisances involving purported obscenity, the public entity is free to choose any of the three options. (*People* ex rel. *Camil* v. *Buena Vista Cinema* (1976) 57 Cal.App.3d 497, 501-503 [129 Cal.Rptr. 315] [purported obscenity nuisance

---

[3]The Orange County Municipal and Superior Courts have since unified, making it unlikely we will see a similar argument again.

[4]The City's designation of a nuisance does not necessarily make it so (*Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711, 718 [97 Cal.Rptr. 840]), but Flahive does not contest the point. In any event, as we shall discuss, a violation of the ordinance fits the definition of a public nuisance.

required prior judicial determination]; and see *Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.* (1990) 221 Cal.App.3d 1601, 1616 [271 Cal.Rptr. 596] [public entity, like individuals, should be able to pursue full panoply of remedies for nuisance].)

The City chose the third option, abatement,[5] and after a duly noticed administrative hearing, a retired jurist sitting as an administrative law judge determined Flahive created a nuisance by violating the municipal code.[6] Thus, the City did not go to court for a determination Flahive's violation constituted a nuisance. It had another reason—to get a warrant authorizing it to enter Flahive's property for nuisance abatement.

Flahive claims the trial court did not have jurisdiction over her property because no summons was issued and served on her. As we have concluded, the matter before the court was not a civil action, but even if a summons were required, Flahive waived the issue by appearing and consenting to the

---

[5]In considering the issues in the case, we have noted the terms "abatement" and "summary abatement" are used in this area of the law. Neither of the parties suggests the issues turn on the terminology used, and we agree. We nevertheless make some observations about the terms.

Civil Code section 3491 lists abatement as a remedy for a public nuisance but does not otherwise define it. Government Code section 38773 authorizes cities to provide for "summary" abatement of a nuisance but likewise does not define that term. Witkin appears to construe "summary abatement" to mean a destruction without *any* prior hearing. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 142, p. 824; see also 6A McQuillin, Municipal Corporations (3d rev. ed. 1997) Municipal Police Power and Ordinances, § 24.71, pp. 203-205.) Longtin, on the other hand, appears to include within the term those abatements effectuated after an administrative hearing by the municipality. (2 Longtin, Cal. Land Use (2d ed. 1987) Other Concepts and Controls, § 10.66[1], p. 959.) The third edition of California Jurisprudence is in accord. (47 Cal.Jur.3d, Nuisances, §§ 37, 40, pp. 261-263, 265-267.)

In its purest sense "abatement" is the act of eliminating the condition that causes the nuisance. (See Black's Law Dict. (5th ed. 1979) p. 962, col. 1.) It says nothing about the process authorizing the abatement. The term has been used broadly, however, to include both judicially authorized destruction and injunctive relief. (2 Longtin, Cal. Land Use, *supra*, Other Concepts and Controls, § 10.66[1], pp. 958-959.) Although it tends to blur the distinctions in Civil Code section 3491, we have no quarrel with that broad usage.

Using "summary abatement" to refer to all abatements accomplished without a civil action, however, is problematic. Absent an emergency situation, minimum administrative due process protections are required before the physical abatement. (*Leppo* v. *City of Petaluma, supra,* 20 Cal.App.3d at p. 717; see also *Mohilef* v. *Janovici* (1996) 51 Cal.App.4th 267, 276, 286-301 [58 Cal.Rptr.2d 721].) Those instances where a hearing is required should be distinguished from those where an emergency excuses one. We prefer to reserve the term "summary abatement" for the latter cases and adopt the term "administrative abatement" for those situations requiring some form of predestruction hearing.

[6]Although Flahive does not attack the adequacy of the hearing procedures, we note that they appeared to be sufficient. (See generally, *Mohilef* v. *Janovici, supra,* 51 Cal.App.4th at pp. 276, 286-301.)

court's jurisdiction. (See *Kriebel* v. *City Council* (1980) 112 Cal.App.3d 693, 699-700 [169 Cal.Rptr. 342].)[7]

■ Flahive asserts the warrant was void because it was issued by a commissioner. Flahive waived this issue as well by agreeing to have a commissioner consider the warrant application. To reach this conclusion, we examine *Gleaves* v. *Waters* (1985) 175 Cal.App.3d 413 [220 Cal.Rptr. 621].

The *Gleaves* court held, "[I]n the absence of consent or exigent circumstances, government officials engaged in the abatement of a public nuisance must have a warrant to enter any private property where such entry would invade a constitutionally protected privacy interest." (*Gleaves* v. *Waters*, *supra*, 175 Cal.App. at p. 419.) The court noted there was no statutory procedure for obtaining a warrant to abate a nuisance, but because the public entity was simultaneously engaged in an inspection, the court relied on statutes dealing with inspection warrants. (*Id.* at p. 420.)

We are faced with an entry only to abate a nuisance, not for an inspection. In the 14 years since *Gleaves*, no statutory procedure has been enacted. We have examined the commentators and treatises listed above (*ante*, fn. 5), and have found no discussion of common or suggested procedures. But because Flahive only challenges the commissioner's power to issue the warrant, we need only address that point.[8]

A commissioner may act temporarily as a judge by appointment or by written consent of appearing parties. (Code Civ. Proc., § 259, subd. (e).)

---

[7]And, as we shall discuss concerning her next argument, she was not entitled to notice of the warrant proceeding in any event.

[8]We note, however, the procedure the City employed appears to pass constitutional muster because it mirrored the statutory requirements for other types of warrants. The warrant was issued upon probable cause to believe grounds for the abatement existed, shown by an affidavit which also particularly described the place to be inspected. (See Code Civ. Proc., §§ 1822.51-1822.52 [re inspection warrants]; Pen. Code, § 1525 [re warrants relating to crimes].) The warrant was in writing, directed to a state or local official, and commanded the abatement authorized by an appropriate law. (See Code Civ. Proc., § 1822.50; Pen. Code, § 1523.) The warrant particularly described the place where the abatement was to take place and designated the purpose for the intrusion and limitations on it. (See Code Civ. Proc., § 1822.54; Pen. Code, §§ 1528-1529.)

The warrant was valid for a reasonable time and limited the hours during which it could be executed. The owner's presence was not required, but the City was required to post notice on the property at least 24 hours before the abatement. (See Code Civ. Proc., §§ 1822.55, 1822.56; Pen. Code, §§ 1533-1534.) Only reasonable force to execute the warrant was authorized. (See Code Civ. Proc., § 1822.56; Pen. Code, § 1531 [allowing forcible entry if admittance is refused].) After the abatement was complete, the City filed a sworn return, as the warrant commanded, stating with reasonable particularity what actions were taken to abate the nuisance and the results. (See Pen. Code, § 1537.)

Whether or not the City was required to give Flahive notice of its attempt to obtain the abatement warrant,[9] it did so. Flahive appeared and stipulated to have a commissioner hear the matter, making him effectively a temporary judge.[10]

Flahive claims she never entered such a stipulation. She notes correctly the parties initially stipulated in this action that she never agreed to have the warrant application heard by a commissioner. But when the City later discovered the court minutes showing the stipulation to a commissioner, it moved to modify its stipulation in this action. The trial court denied the motion because the copy of the minutes was not certified, but granted the City leave to raise the issue again in its trial brief. The City submitted a certified copy of the minutes with its trial brief. The trial court allowed the City to withdraw its stipulation Flahive had not consented to a commissioner and found she had stipulated. (See *Robinson* v. *Workers' Comp. Appeals Bd.* (1987) 194 Cal.App.3d 784, 790 [239 Cal.Rptr. 841] [trial court has discretion to allow a party to withdraw from a stipulation for good cause].)

Flahive urges the trial court's finding was wrong, noting the minutes are ambiguous. She correctly points out her property is listed as the defendant, both in the pleadings and in the minutes, and the minutes state "parties and counsel" stipulated to the commissioner. It would be absurd, however, to assume the property was the party that stipulated.

Flahive was also listed in the minutes as "defendant." She fails to explain why she attended and participated in the hearing if she was not a party. The court and the City obviously treated her as the defendant for the purposes of the proceedings.

---

[9]However, no case of which we are aware requires notice to the person whose property will be entered to execute any sort of warrant. And even though the City filed a formal "Application for Abatement Warrant" with points and authorities, we also see no reason why it should be required to do so. Typically, officials seeking a warrant merely contact the warrant duty judge informally and submit the affidavit and the warrant. On the other hand, the procedure the City employed would be useful if the duty judge might be unfamiliar with the authorization for such warrants and the process for obtaining them.

[10]Although we do not decide the issue, this may have been fortunate for the City. We know of no case or statute authorizing a commissioner to issue warrants other than bench warrants for arrest. (Gov. Code, §§ 72190.1-72190.2.) Commissioners are authorized to perform only "subordinate judicial duties" (Cal. Const., art. VI, § 22), and their general duties are expressly set forth in Code of Civil Procedure section 259. None of the express duties involve the issuance of warrants.

Flahive observes she is an elderly woman who had no attorney. But she does not suggest she was incompetent to enter the stipulation or that a party without counsel cannot do so.[11]

Flahive suggests the trial court in this action denied her right to contest the minutes. But she agreed to have the court hear the matter based on certain stipulated facts and documents. At trial she did not seek to withdraw from that agreement, even after the court indicated it would accept a certified copy of the minutes on the commissioner issue.

### II, III*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. The City is entitled to its costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

---

[11]She also notes she was not served with a summons, but as we have indicated, none was necessary.

*See footnote, *ante*, page 241.