[No. B199294. Second Dist., Div. Two. Sept. 11, 2008.]

JAY BHARAT DEVELOPERS, INC., et al., Plaintiffs and Appellants, v. JIM MINIDIS et al., Defendants and Respondents.

**COUNSEL**

James W. Denison for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, David M. Makous, Leo A. Bautista and Allison A. Arabian for Defendants and Respondents.

**OPINION**

**ASHMANN-GERST, J.**—This appeal arises out of the termination of a franchise agreement. Appellants Jay Bharat Developers, Inc. (Jay Bharat), Jay Bharat Resorts, Inc., Bipin Morari (Morari), and Chandrakant Patel (Patel), the franchisees, challenge a trial court order granting the motion for a preliminary injunction of respondents Jim Minidis (Jim), Lynn Minidis (Lynn),[1] RedBrick Pizza Worldwide, Inc. (RedBrick Pizza), and RedBrick Pizza, Inc., the franchisors. They essentially assign three errors to the trial

---

[1] We refer to the Minidises by their first names, not out of familiarity or disrespect, but for ease of reference. (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2 [102 Cal.Rptr.2d 743]; *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

court's order. First, appellants contend that the trial court erroneously followed *Burger King Corp. v. Hall* (S.D.Fla. 1991) 770 F.Supp. 633 (*Burger King*) and refused to consider appellants' alleged evidence of fraud in evaluating the merits of respondents' request for an injunction. They claim that the trial court should have found that respondents' termination of the franchise agreement was proper before granting their request for a preliminary injunction. Second, appellants argue that respondents' unclean hands precluded the issuance of a preliminary injunction. Third, citing Code of Civil Procedure section 1281.8,[2] appellants assert that the trial court should never have entertained respondents' motion, given that the litigation had been ordered into arbitration before respondents sought injunctive relief.

We are not convinced by appellants' arguments. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Parties to the Master Franchise Agreement (MFA)*

RedBrick Pizza is the franchisor of the RedBrick Pizza Franchise System. Jim and Lynn are cofounders of the franchise.

Jay Bharat is a California corporation owned and operated by Morari and Patel. In 2002, pursuant to the MFA, Jay Bharat became a master franchisee of RedBrick Pizza in Southern California. The MFA permitted Jay Bharat to sell franchises within a certain territory. Morari and Patel executed the MFA on behalf of Jay Bharat.

The MFA explains the terms of the parties' business relationship. As is relevant to this appeal, the MFA contains a royalty payment schedule, which sets forth Jay Bharat's royalty payment obligations to RedBrick Pizza.

The MFA also sets forth the circumstances under which RedBrick Pizza can terminate the MFA. In addition to other grounds, "[i]f [Jay Bharat] fails to perform any obligation imposed upon [it] by this [MFA] . . . and such default is not totally cured within 30 days after . . . written notice of such default to [Jay Bharat] . . . , then [RedBrick Pizza] may terminate this [MFA] at any time thereafter."

And, the MFA contains an arbitration provision. Excluded from the parties' arbitration agreement are disputes in which injunctive relief is sought.

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

As a condition of their agreement, Morari and Patel agreed to own and operate a RedBrick Pizza restaurant within the territory of Cerritos, California, pursuant to a unit franchise agreement, which contains substantially similar terms to the MFA.

*The Complaint*

On July 8, 2005, appellants initiated a lawsuit against respondents, alleging 11 causes of action. In particular, appellants averred that respondents fraudulently induced them to enter into the MFA by failing to disclose pending litigation in the franchise-offering circular and by misrepresenting that they could adequately train and support franchisees, had sufficient vendor contacts, and owned the trademark rights pertaining to the RedBrick Pizza brand. Appellants later filed a first amended complaint, with largely similar allegations and claims.

*The Parties Are Ordered to Arbitration*

Respondents moved to compel arbitration pursuant to the MFA. Over appellants' opposition, on November 21, 2005, the trial court granted the motion and ordered the case to arbitration.

*RedBrick Pizza Terminates the MFA*

On August 25, 2006, RedBrick Pizza terminated Jay Bharat's MFA. According to RedBrick Pizza, Jay Bharat had been in breach of the MFA by failing to pay royalties and advertising fees. Jay Bharat then permitted its registration as a franchisor with the State of California to lapse, operated franchises outside of its territory, failed to report income, and committed other contract violations. RedBrick Pizza provided Jay Bharat numerous opportunities to cure the defaults, but terminated the contract when no cure was forthcoming. The notice of termination demanded that Jay Bharat comply with all posttermination obligations under the MFA.

*RedBrick Pizza's Cross-complaint*

On or about February 13, 2007, RedBrick Pizza filed a cross-complaint against Jay Bharat, Morari, and Patel. RedBrick Pizza alleged, inter alia, that Jay Bharat refused to honor the termination of the MFA and continued to receive royalties from its former franchisees and withhold them from RedBrick Pizza.

*RedBrick Pizza's Motion for Preliminary Injunction*

The cross-complaint was accompanied by a motion for a preliminary injunction. RedBrick Pizza argued that Jay Bharat, Morari, and Patel should

be enjoined from continuing to represent themselves as a RedBrick Pizza master franchisee and from using franchise trademarks. RedBrick Pizza further asserted that the franchise relationship was properly terminated and that the injunction was warranted to prevent further economic harm.

In support of the motion, RedBrick Pizza offered Lynn's declaration. Lynn, the vice-president and chief financial officer of RedBrick Pizza, testified that in August 2002, Morari and Patel executed the MFA with RedBrick Pizza on behalf of Jay Bharat. Under the terms of the MFA, Jay Bharat became a master developer for a protected territory that included Los Angeles, Ventura, and Mono Counties. However, the Antelope and Santa Clarita Valleys were specifically excluded from the territory. Jay Bharat paid an initial fee of $600,000 for the right to act as a subfranchisor in the protected territory using the franchise system and its proprietary marks. As a master developer, Jay Bharat was responsible for selling a certain number of third party franchises in the territory as well as operating its own RedBrick Pizza restaurant in Cerritos.

Lynn further attested that the franchise relationship began to deteriorate before Jay Bharat commenced litigation. For example, Jay Bharat sold a franchise outside of its territory, in Santa Clarita Valley. Jay Bharat ignored Lynn's request for $21,000 to add this new territory to the MFA.

Moreover, Jim was attempting to address various issues that were impacting the franchise relationship, including Jay Bharat's operation of its own restaurant in Cerritos, its failure to use approved vendors, its default on royalty payments, its failure to properly close down one of the franchises within its territory, and unprofessional behavior. Thus, RedBrick Pizza gave Jay Bharat notice that it was in material breach of the MFA. RedBrick Pizza demanded that the defaults be cured within 30 days.

Ultimately, the breaches were not cured and, on August 25, 2006, RedBrick Pizza terminated the MFA. Although RedBrick Pizza demanded that Jay Bharat comply with its posttermination obligations, it failed to do so, proceeding as if the termination were ineffective.

Appellants opposed the motion for preliminary injunction on several grounds. In particular, they asserted that section 1281.8 prohibited the issuance of a preliminary injunction, and that respondents could not establish a likelihood of success on the merits, in part because of respondents' alleged unclean hands.

After entertaining oral argument, the trial court granted respondents' motion. Appellants' motion for reconsideration was denied.

This timely appeal ensued.

## DISCUSSION

### I. *Standard of review*

■ The issue in this appeal is whether the trial court erred in issuing the preliminary injunction. "The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73 [196 Cal.Rptr. 715, 672 P.2d 121].) "[A]s a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*White v. Davis* (2003) 30 Cal.4th 528, 554 [133 Cal.Rptr.2d 648, 68 P.3d 74].)

"The party challenging an order granting or denying a preliminary injunction has the burden of making a clear showing of an abuse of discretion. [Citation.] An abuse of discretion will be found only where the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence. [Citation.]" (*Tahoe Keys Property Owners' Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1470 [28 Cal.Rptr.2d 734].) "Where the evidence with respect to the right to a preliminary injunction is conflicting, the reviewing court must 'interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.' " (*Gleaves v. Waters* (1985) 175 Cal.App.3d 413, 416–417 [220 Cal.Rptr. 621].) When the matter raised on appeal is solely a question of law, the standard of review is not abuse of discretion " 'but whether statutory or constitutional law was correctly interpreted and applied by the trial court.' " (*Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094 [271 Cal.Rptr. 44].)

### II. *The trial court properly issued a preliminary injunction*

■ Applying the foregoing principles, we conclude that the trial court properly granted respondents' motion for a preliminary injunction. First, respondents established the likelihood of prevailing on the merits. (*White v. Davis, supra,* 30 Cal.4th at p. 554.) "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits." (*S & R Corp. v. Jiffy*

*Lube Intern., Inc.* (3d Cir. 1992) 968 F.2d 371, 376.) Yet that is exactly what appellants tried to do. According to the evidence presented to the trial court, appellants breached the MFA by failing to make royalty payments and failing to pay advertising fees. Despite their breaches, appellants still wanted to use the RedBrick Pizza franchise and trademarks. They cannot do so. Once appellants breached the MFA, respondents could terminate that franchise agreement and prevent appellants from utilizing the RedBrick Pizza franchise.

Based upon respondents' showing of likelihood of success on its claims, we conclude that the trial court could presume irreparable injury. (See, e.g., *GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2000) 202 F.3d 1199, 1209; *Charles Schwab & Co., Inc. v. Hibernia Bank* (N.D.Cal. 1987) 665 F.Supp. 800, 812.) In any event, after weighing the balance of harms, an injunction prohibiting appellants, as terminated franchisees, from continuing to use respondents' trademark is certainly appropriate. (*S & R Corp. v. Jiffy Lube Intern., Inc., supra*, 968 F.2d at p. 378.)

In urging us to reverse the trial court's order, appellants raise several arguments. *First*, they contend that the trial court erroneously relied upon *Burger King, supra*, 770 F.Supp. 633, in granting respondents' motion. They claim that the trial court should have (1) found that respondents' termination was not wrongful before granting a preliminary injunction, and (2) considered appellants' allegations of fraud. Appellants' argument is flawed. As evidenced by the reporter's transcript, the trial court did find that respondents' termination of the MFA was not wrongful; in fact, the trial court determined that respondents terminated the MFA because of appellants' several contractual breaches.

At the hearing on respondents' motion, the trial court commenced oral argument by commenting on the "substantial and serious disputes between the parties with regard to .this franchise." The trial court then noted that appellants had not "been living up to the franchise agreement with regard to royalty payments [and] advertising fees due,"[3] prompting it to query why an injunction should not issue "where in fact we have all of the breaches of the franchise agreement." Appellants responded by disputing whether they had breached the MFA and by asserting that the trial court should not ignore their allegations of fraud. But, the trial court was not persuaded, concluding that even if appellants ultimately proved their fraud claim, "there [would] still [be] no way that [they could] continue operating under the franchise. All they [could] get is a judgment, money judgment, for huge amounts of money."

---

[3] Later, in its discussion with counsel, the trial court reiterated that appellants had not "paid any fees or any of the monies due under the [MFA] for . . . almost a year and three or four months."

This dialogue compels us to conclude that, appellants' arguments on appeal notwithstanding, the trial court did not follow *Burger King, supra*, 770 F.Supp. 633, and ignore appellants' allegations of fraud. Rather, it considered the evidence and determined that appellants had breached the MFA, which provided grounds for its termination. This analysis was proper and supported by the evidence. (See, e.g., *S & R Corp. v. Jiffy Lube Intern., Inc., supra*, 968 F.2d at p. 377.)

Moreover, in so ruling, the trial court was mindful of appellants' allegations of fraud. However, the trial court correctly determined that those allegations were relevant to appellants' damages claim, not to the question of whether an injunction was an appropriate remedy.

In a similar vein, appellants assert that the doctrine of unclean hands precludes the imposition of a preliminary injunction. In other words, appellants claim that their allegations of fraud, based upon respondents' alleged nondisclosure of pending litigation at the time the parties entered into the MFA, preclude them from obtaining the equitable remedy of an injunction.

■ We disagree. The venerable doctrine of unclean hands arises from the maxim that one who comes to court seeking equity must come with clean hands. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059 [272 Cal.Rptr. 250].) "The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 [90 Cal.Rptr.2d 743] (*Kendall-Jackson*).)

"The unclean hands doctrine protects judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding recovery to the unclean plaintiff protects the court's, rather than the opposing party's, interests. [Citations.] The doctrine promotes justice by making a plaintiff answer for his own misconduct in the action. It prevents 'a wrongdoer from enjoying the fruits of his transgression.' [Citations.]" (*Kendall-Jackson, supra*, 76 Cal.App.4th at pp. 978–979.)

"The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue . . . . The misconduct must ' " 'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' " ' [Citation.]" (*Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979.)

■ Courts have "gleaned a three-pronged test to determine the effect to be given to the plaintiff's unclean hands conduct. Whether the particular

misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. [Citations.]" (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 979.)

■ Against this backdrop, the doctrine of unclean hands does not preclude respondents from obtaining injunctive relief. As for analogous case law, courts have concluded that injunctive relief is appropriate where a terminated franchisee continues to use a franchisor's trademark. (See, e.g., *S & R Corp. v. Jiffy Lube Intern., Inc., supra,* 968 F.2d at pp. 376–377; *McDonald's Corp. v. Robertson* (11th Cir. 1998) 147 F.3d 1301, 1308–1310.) Moreover, the nature of the alleged misconduct—respondents' alleged failure to disclose pending litigation in the franchise-offering circular—does not "infect the cause of action involved and affect the equitable relations between the litigants." (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 984.) Rather, as the trial court pointed out, if appellants prevail on their fraud claim, they will obtain a substantial money judgment. Nothing in that respect is changed by the injunction. Accordingly, the trial court did not abuse its discretion in refusing to deny respondents a preliminary injunction based upon the unclean hands doctrine. (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1100 [9 Cal.Rptr.3d 286].)

*Finally,* Jay Bharat argues that section 1281.8 prohibited the trial court from issuing the preliminary injunction. We are not convinced.

Section 1281.8, subdivision (b), provides, in relevant part: "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."

■ In deciding whether to issue an injunction pursuant to section 1281.8, the trial court must weigh the same factors it considers in proceedings under section 526: (1) likelihood of success on the merits, and (2) whether the moving party will suffer irreparable harm in the interim if the injunction is not issued. (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420–1421 [130 Cal.Rptr.2d 385].) Interim injunctive relief under section 1281.8, therefore, is appropriate only if the applicant "has no adequate alternative remedy, and will suffer irreparable harm if the injunction is denied." (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 450 [60 Cal.Rptr.2d 641].)

██ That is exactly what RedBrick Pizza established. As set forth above, respondents proved a likelihood of success on the merits. They also established irreparable harm, namely by the lack of control over their RedBrick Pizza mark. (*S & R Corp. v. Jiffy Lube Intern., supra*, 968 F.2d at p. 378.) Because RedBrick Pizza proved that the interim harm it would suffer was more than monetary, injunctive relief was appropriate. (*Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 306 [63 Cal.Rptr. 148] ["Generally, where damages afford an adequate remedy by way of compensation for breach of contract, equitable relief will be denied."].)

## DISPOSITION

The order is affirmed. Respondents are entitled to costs on appeal.

Boren, P. J., and Chavez, J., concurred.

A petition for a rehearing was denied October 22, 2008, and appellants' petition for review by the Supreme Court was denied December 23, 2008, S168411. Werdegar, J., did not participate therein.