Filed 5/27/15  Jensen v. County of Sonoma CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROSEMARY JENSEN et al.,<br><br>          Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SONOMA,<br><br>          Defendant and Respondent. | A139466<br><br>(Sonoma County<br>Super. Ct. No. SCV-250210) |

Rosemary Jensen and her son, Randy Jensen,[1] bring this action for an administrative writ of mandate, challenging an abatement order concerning the use of their Sonoma property.  In the underlying administrative proceedings, the hearing officer found plaintiffs used the subject property as a junkyard and for storage of nonoperative vehicles in violation of chapter 26 of the Sonoma County Code, and ordered plaintiffs to abate and pay various administrative costs and civil penalties.  Plaintiffs subsequently filed a writ petition against Sonoma County (the County) pursuant to Code of Civil Procedure section 1094.5,[2] asserting, inter alia, the administrative hearing constituted a violation of their civil rights.  After a bench trial, the court entered judgment in favor of the County.  Plaintiffs now argue (1) the trial court erred by reviewing the decision of the

---

[1]  Because Rosemary and Randy share the same surname, we shall refer to them by their first names for the sake of clarity and readability.  We intend no disrespect in doing so.

[2]  All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

hearing officer for substantial evidence; (2) the abatement order is void because plaintiffs were ordered to pay the costs of the hearing officer; (3) plaintiffs were denied their right to a fair administrative hearing; and (4) due to separation of powers concerns, the hearing officer lacked authority to order abatement. We find plaintiffs' claims meritless and affirm.

## I. BACKGROUND

Rosemary is the record owner of the property at issue, which is 18 acres and located in an unincorporated area of Sonoma County. In November 2006, the County received an anonymous complaint that she and her son Randy were operating an unauthorized wrecking and salvage yard on the property. Plaintiffs denied operating a vehicle storage yard or junkyard on the property, but allowed an inspection by the County. During the scheduled inspection, the County discovered on the property over 200 vehicles, over 10 commercial trailers, three tow trucks, two forklifts bearing the name "Jensen Automotive," various trailers, and miscellaneous junk and metal piles exceeding 1,000 square feet.

In March 2007, the County's permit and resource management department (PMRD) sent Rosemary a notice of violation, asserting the property could not be used for nonoperative vehicle storage or as a truck or equipment depot or junkyard, since the area was zoned "Diverse Agriculture." The notice stated Rosemary was required to cease and remove the unlawful use, and failure to do so within 30 days would result in substantial penalties. Rosemary was given 12 days to appeal the determination of violation. She declined to do so, and the PMRD set an administrative hearing to obtain an order requiring cessation of the unlawful use. In May 2007, plaintiffs sent a letter to the County denying any violation, but stating Randy "plann[ed] to proceed with obtaining building permits necessary to house his car hobby," and requested deferral of any administrative proceeding in the matter.

After several postponements, the abatement hearing was held on March 7, 2008. Under the procedures adopted by the County, such hearings need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence

2

may be considered if it is the sort upon which "responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make [admission] improper." The hearing procedures also limit each speaker's presentation to 10 minutes, but grant the hearing officer discretion to extend the time limit. At the abatement hearing, plaintiffs repeatedly asserted these rules violated their constitutional rights, and that they were "entitled to all the due process requirements as would apply in a criminal proceeding."

With respect to the substantive matters addressed at the abatement hearing, plaintiffs asserted they had a protected grandfathered use of their property pursuant to *Hansen Brothers Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533. Plaintiffs also contended the collection of automobiles on the property was not a junkyard or a truck depot, but merely a longtime family hobby. Rosemary testified that, along with her deceased husband, she had owned the property since 1973. Prior to that, her husband's parents owned the property. According to Rosemary, her husband and then her son Randy had been collecting cars on the property for at least 60 years. She also said her husband and Randy fixed cars, and Randy sometimes raced them. Likewise, Randy testified he had inherited a car collection from his father, and his hobby was collecting, fixing, selling, and racing cars. He asserted his cars were not visible from outside the property, and they did not bother the neighbors. Randy denied there was any junk on the property, but conceded 20 to 25 percent of his vehicles were inoperable.

The hearing officer found the property was in violation of chapter 26 of the Sonoma County Code with respect to junkyard conditions, nonoperative motor vehicle storage, and truck or equipment terminal. The hearing officer concluded: "That the vehicles were collected pursuant to a hobby and may not be visible from offsite, and that the commercial vehicles are allegedly not used offsite are not legally relevant under the applicable County Code provisions. Although some of the vehicles are 'vehicles of historic value' that do not qualify as 'nonoperative motor vehicles,' clearly most are not." The hearing officer also rejected plaintiffs' contention their use of the property was legally nonconforming: "No evidence supports that the property contained such an

3

extensive collection of motor vehicles at the time the Exclusive Agricultural zoning was applied to the subject property in 1974 (a year or two after the Jensens took possession of the property), and an aerial photograph from 1980 supports that it did not. . . . Even if a motor vehicle collection existed as of 1974, the evidence demonstrates that it has been significantly enlarged and extended since that time."

Plaintiffs were ordered to pay the County's administrative costs of $2,973.75, which consisted of $1,886.25 for abatement, $900 for the hearing officer, and $187.50 for the court reporter. They were also assessed civil penalties of $8,257. The hearing officer ordered plaintiffs to abate the conditions on the property within 45 days. Plaintiffs were to request inspection to verify abatement of the violation.

Plaintiffs then filed an action in federal court, asserting various civil rights violations by the County, including claims under title 42 United States Code section 1983. Among other things, plaintiffs asserted the County violated their due process right to a fair and impartial hearing, their First Amendment right to free speech and to petition, their right against unreasonable search and seizure, their Fifth Amendment right against excessive fines, their right to equal protection of the law, as well as a violation of article I, section 1 of the California Constitution, which accords all people the right to life, liberty, and property. They alleged the administrative hearing "was conducted with total disregard of any organized fashion for presenting and rebutting evidence," the County interfered with their right to cross-examine witnesses, and the hearing officer was biased. The federal court granted summary judgment in favor of the County. (*Jensen v. County of Sonoma* (N.D.Cal. June 4, 2010, No. C-08-3440 JCS) 2010 WL 2330384 (*Jensen*), affd. (9th Cir. 2011) 444 Fed.Appx. 156.)

At some point, plaintiffs filed this administrative mandamus action pursuant to section 1094.5. As in the federal action, plaintiffs asserted deprivations of various rights under the California and United States Constitutions. In December 2012, the trial court granted the County's motion for summary adjudication as to plaintiffs' claim for violation of article I, section 1 of the California Constitution, finding the federal court had

4

already determined there was no evidence to support such a claim. The court also rejected plaintiffs' claim for invasion of privacy.

The remainder of plaintiffs' claims were adjudicated at a half-day bench trial. The trial court issued a thorough and considered statement of decision and found in favor of the County on each and every issue. Specifically, the court found as follows: (1) the administrative order was not void for imposing the adjudicator's costs on plaintiffs; (2) the County had a rational basis for enacting and enforcing the pertinent zoning ordinances; (3) the County did not engage in impermissible spot zoning; (4) plaintiffs' claim that they were denied a meaningful opportunity to be heard had already been rejected by the federal court and could not be relitigated; (5) substantial evidence supported the hearing officer's determination that plaintiffs' use of the property was not legally nonconforming; (6) there was a lawful basis for the imposition of civil penalties; and (7) the administrative order did not violate California's separation of powers.

## II. DISCUSSION

### A. *Standard of Review*

Plaintiffs assert the underlying writ petition involved a matter of fundamental rights and the trial court therefore should have applied the independent judgment test. Instead the trial court reviewed the hearing officer's findings for substantial evidence, which plaintiffs contend was reversible error. For similar reasons, plaintiffs assert we should review the trial court's decision de novo.

The last contention may be quickly answered. Regardless of whether the trial court was required to apply the independent judgment test, on appeal we apply the substantial evidence standard and overturn factual findings only if the evidence is insufficient as a matter of law to sustain the findings. (*Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 14.) Purely legal questions, including whether plaintiffs received a fair hearing, will be reviewed de novo. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169 (*Clark*).)

We also reject plaintiffs' contention that the trial court erred in declining to apply the independent judgment standard. "If an administrative decision substantially affects a

5

fundamental vested right, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence." (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525 (*Goat Hill Tavern*).) In such cases, "the courts have held the loss of [the right] is sufficiently vital to the individual to compel a full and independent review. The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144.) Under the independent judgment standard, administrative findings are entitled to a strong presumption of correctness, and the party challenging those findings bears the burden of showing they were contrary to the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) If, however, fundamental vested rights are not implicated, "the trial court must still review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law, but the trial court need not look beyond that whole record of the administrative proceedings." (*Bixby v. Pierno*, at p. 144, fn. omitted.)

Whether an administrative decision affects fundamental vested rights must be determined on a case-by-case basis. (*Bixby v. Pierno*, *supra*, 4 Cal.3d at p. 144.) "Although no exact formula exists . . . [citation], courts are less sensitive to the preservation of purely economic interests. [Citation.] In deciding whether a right is 'fundamental' and 'vested,' the issue in each case is whether the ' "affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking judicial power." ' " (*301 Ocean Ave. Corp. v. Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1556, italics omitted.) A full and independent judicial review is warranted "[w]hen an administrative decision affects a right which has been legitimately acquired . . . and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation' . . . ." (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34.)

6

The acquisition of a fundamental vested right is grounded on principles of estoppel. (*Stanson v. San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 49.) Thus, a property owner may acquire a fundamental vested right to develop his or her property "where the conduct of the government amounts to a representation that such [development] is fully approved and legal, and in reliance on such representation the owner materially changes position." (*Ibid.*) For example, in *Goat Hill Tavern*, the court found a fundamental vested property right where a city refused to renew a tavern owner's conditional use permit after he invested $1.75 million in refurbishing his property, and some of the improvements were undertaken at the city's behest. (*Goat Hill Tavern, supra,* 6 Cal.App.4th at p. 1529.) The court reasoned: "Interference with the right to continue an established business is far more serious than the interference a property owner experiences when denied a conditional use permit in the first instance. Certainly, this right is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body." (*Ibid.*)

The trial court concluded substantial evidence review was sufficient in this case because plaintiffs provided no evidence showing the specific uses the County sought to abate were maintained upon the property prior to the implementation of the subject ordinances, or that those uses were fundamental to plaintiffs' economic or life situation. As to the latter point, the court stated the administrative decision would not deny plaintiffs all rights to maintain a car collection, but merely imposed conditions on the type of collection and the manner in which it is kept. Plaintiffs now argue the trial court assumed its conclusion and engaged in circular argument by asserting plaintiffs had cited no evidence regarding their prior use of the property. Plaintiffs contend independent judgment review was required because they asserted "they had a long-standing grandfathered use of a highly personal nature in the form of [a] personal hobby," and these assertions were not rebutted in the testimony.

We find no error. There was substantial evidence in the record to support the trial court's conclusion plaintiffs did not have a long-standing grandfathered use of the property predating the relevant zoning ordinances. The evidence adduced at the

administrative hearing indicates plaintiffs currently keep over 200 vehicles on the property, and at least 25 percent of those vehicles are nonoperational. While Rosemary testified her husband's car collecting hobby dated as far back as 1956, there is no indication he owned anywhere near 200 vehicles during the period prior to the enactment of the ordinance in 1974, or whether any of those vehicles were nonoperational. Randy's testimony at the administrative hearing was also vague on these points. Moreover, the hearing officer concluded an aerial photograph of the property from 1980 did not show an extensive collection of motor vehicles on the premises at that time. There is also no indication plaintiffs attempted to introduce additional evidence concerning the historical use of the property during the writ proceedings.

Even if the condition of plaintiffs' property had not changed since the enactment of the zoning ordinance, plaintiffs have failed to show they have a fundamental right to use the property as a storage yard for an extensive number of nonoperational vehicles. There is no evidence plaintiffs derive significant income from the vehicles on the property, or that the abatement order affects the property's economic value. Nor is there evidence plaintiffs made a significant investment in the nonoperational vehicles, let alone that they did so in reliance on any action by the County. Further, as the trial court observed, the abatement order does not preclude plaintiffs from pursuing a car collecting or racing hobby; it merely limits the manner in which they may do so. To the extent plaintiffs are arguing they have a fundamental right to keep on their property as many nonoperational vehicles as they wish in whatever condition they wish, they have failed to point to any supporting authority.[3]

---

[3] Plaintiffs also argue the independent judgment test must be applied because "the issue tendered is whether a fair administrative hearing was conducted." But as plaintiffs' own authority holds, in such cases, a plaintiff is merely entitled to an independent judicial determination of whether he or she received a fair administrative hearing. (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 776.) As set forth below, plaintiffs' claim that they were denied a fair hearing is barred by collateral estoppel.

8

**B.** *Hearing Officer's Fees*

At trial, plaintiffs argued the entire administrative hearing process was void because they were ordered to pay the hearing officer's costs of $900. The trial court rejected this argument because plaintiffs failed to cite the code provision pursuant to which the hearing officer assessed costs,[4] and even if the provision was provided and was unconstitutional, there was no basis for voiding the entire hearing. Plaintiffs now argue the trial court's decision is inconsistent with *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327 (*California Teachers*), and the administrative proceeding is void because the hearing officer had a pecuniary interest in the outcome of the hearings. We disagree on both counts.

In *California Teachers*, an adjudicator at an administrative hearing upheld a public school district's decision to dismiss a teacher for misconduct. (*California Teachers, supra,* 20 Cal.4th at pp. 331–332.) State law provided the teacher could be charged half the cost of the hearing, including the cost of the officer. (*Id.* at p. 341.) The teacher did not pay the bill, and was then notified his state income tax refunds would be offset against the debt. (*Id.* at p. 332.) The teacher petitioned for a writ of mandate to compel the State Controller not to offset the refund against the debt. (*Ibid.*) On appeal, our Supreme Court held the cost-shifting statute was unconstitutional because, "The legislative purpose of imposing the cost of the adjudicator upon teachers to deter them from requesting administrative hearings on nonfrivolous grounds is not a legitimate one." (*California Teachers*, at p. 346.) The court also found a due process violation under *Mathews v. Eldridge* (1976) 424 U.S. 319, because the state's interest in "conserving resources or discouraging hearings that happen to result in an administrative or judicial decision against a teacher does not outweigh the teacher's strong interest in presenting his

---

**4** The record reflects the hearing officer's fees were assessed pursuant to Sonoma County Code section 1-7.3, subdivision (h), which states if a hearing officer finds a zoning violation exists, a property owner shall be responsible for paying the County's administrative abatement costs, including any costs set forth in the notice of violation. Here, the notice of violation sent to plaintiffs indicated they could be assessed the costs of the hearing officer.

or her side of the case and in invoking the discretion of the adjudicator [or] the public's interest in preventing erroneous or arbitrary dismissals or suspensions of teachers in our public schools." (*California Teachers*, at p. 357.)

Contrary to plaintiffs' assertion, nothing in *California Teachers* suggests we must void the entire abatement hearing based on the imposition of the hearing officers' costs. Since the plaintiff in *California Teachers* did not seek judicial review of the adjudicator's decision affirming his dismissal, the court did not have the opportunity to address the validity of the hearing. (*California Teachers, supra,* 20 Cal.4th at p. 332.) As plaintiffs point out, the court in *California Teachers* was concerned imposition of a hearing officer's fees could chill the exercise of the right to demand a hearing. (*Id.* at p. 338) But in this case, plaintiffs were undeterred by the possibility of a fee assessment and demanded a hearing anyway. Thus, even if the imposition of the adjudicator's fees was unconstitutional, it did not affect the validity of the abatement hearing or the resulting abatement order.[5]

We also reject plaintiffs' contention that the underlying proceedings are void because the hearing officer had a pecuniary interest in their outcome. Plaintiffs fail to explain the basis for their argument other than to cite to *Clark*, *supra*, 48 Cal.App.4th 1152, and *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017. Neither case holds the imposition of a hearing officer's fees on a losing party renders a hearing officer impartial. In *Clark*, the court found the plaintiffs were denied a fair hearing before a city council because, among other things, the project at issue would have had a direct impact on the residence of one of the council members. (*Id.* at pp. 1172–1173.) In *Haas*, the court held certain hearing officers had a pecuniary interest requiring disqualification where a county unilaterally selected and paid them on an ad hoc basis and the officers' income from future adjudicative work depended entirely on the county's goodwill. (*Id.* at p. 1024.) The court reasoned it was logical to assume the county would advance its own

---

[5] We need not determine whether plaintiffs are entitled to recover the $900 fee for the hearing officer's costs because they declined to request such relief below and failed to raise the issue on appeal.

self-interest by preferring hearing officers who tended to issue rulings favorable to it. (*Id.* at p. 1029.) Here, plaintiffs have failed to point to any evidence or authority indicating how the County selected the hearing officer for the abatement proceeding. There is also no indication the hearing officer's fees or future employment with the County were contingent on the outcome of the proceedings or who paid her fees.

## C. *Right to a Fair Hearing*

The trial court rejected plaintiffs' claim that they were denied a fair administrative hearing, finding it was barred by the doctrine of issue preclusion. The court reasoned plaintiffs had raised similar claims against the County in the federal action, and those claims were dismissed on the merits. Plaintiffs now assert the trial court erred by conflating federal due process with the right to a fair hearing under section 1094.5. The argument lacks merit.

Issue preclusion, also known as collateral estoppel, bars relitigation of issues argued and decided in prior proceedings. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) The elements of issue preclusion are as follows: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Ibid.*)

Each of these elements is satisfied here. In both this action and the federal action, plaintiffs alleged they were denied a fair hearing because the hearing officer interrupted their presentation of the case, prejudged the facts, disrupted plaintiffs' cross-examination of witnesses and the flow of testimony, abbreviated the time allotted for plaintiffs' case, and allowed nontestifying persons to interject. The federal court addressed and rejected all of these claims on summary judgment, finding they did not amount to a violation of procedural due process. The court stated: "Nothing in the record indicates [plaintiffs] were prevented from presenting their case, denied the opportunity to present evidence,

put on witnesses, or to cross-examine witnesses for the Defendant.  Indeed, if anything, the hearing transcript demonstrates that the hearing officer allowed extensive questioning and argument on irrelevant matters at the insistence of Plaintiffs' counsel.  The transcript of the hearing reveals that the officer displayed patience and neutrality in the face of hostility and constant disruption from Plaintiffs' counsel.  [Citation.]  Moreover, the record reflects that counsel for Plaintiffs spent a considerable amount of time arguing with witnesses, counsel and the hearing officer regarding matters already deemed irrelevant by the officer[,] such as lengthy argument regarding the anonymous complaint filed against Plaintiffs that began the administrative process.  [Citation.]  The hearing officer acted well within her discretion to limit the hearing as a result of Plaintiffs' counsel's decision to utilize his time in such a manner rather than address the merits of the case against his clients."  (*Jensen*, *supra*, 2010 WL 2330384, at p. *15.)  The trial court's decision was affirmed on appeal.

Despite the federal court's lengthy discussion of plaintiffs' complaints about the manner in which the abatement hearing was conducted, plaintiffs assert their right to a fair hearing under section 1094.5 was not adjudicated in the federal proceedings.  In ruling otherwise, plaintiffs argue, the trial court "conflated federal due process with the right guaranteed . . . under [section] 1094.5 to a 'fair hearing,' which as a matter of law is broader than federal due process in the context of [an] administrative hearing."  Plaintiffs contend *Clark*, *supra*, 48 Cal.App.4th 1152, shows the federal court's disposition of their procedural due process claims does not preclude the litigation of their right to a fair hearing under section 1094.5 in this action.  We disagree.

In *Clark*, the plaintiffs challenged a city council's decision to deny a permit application to demolish their duplex and replace it with a two-unit condominium, seeking a writ of administrative mandate pursuant to section 1094.5, and alleging federal civil rights violations under title 42 United States Code section 1983.  (*Clark, supra,* 48 Cal.App.4th at p. 1159.)  The court held the plaintiffs were deprived of a fair hearing under state law, reasoning one of the council members had a conflict of interest, the plaintiffs did not have an opportunity to address certain concerns raised by the city

12

council after the public hearing concluded, and the city exhibited bias in connection with an unsuccessful effort to impose a construction moratorium. (*Id.* at pp. 1172–1173.) Nevertheless, the court found no procedural due process violation because the plaintiffs did not have a federally protected property interest in the development of their project. (*Id.* at pp. 1182–1183.)

In contrast, in the instant action, the federal court found plaintiffs' complaint implicated a "well-established constitutional property right" and reached the merits of their procedural due process claim.[6] (*Jensen*, *supra*, 2010 WL 2330384, at pp. *13–*16.) Thus, questions of fact regarding the conduct of the abatement hearing have already been resolved adversely to plaintiffs. Plaintiffs may not relitigate these issues now. Even if the federal court's decision did not have any preclusive effect here, we would reject plaintiffs' fair hearing claims for the same reasons as the federal court. Having reviewed the transcript of the abatement hearing, we conclude the hearing officer provided plaintiffs with a full and fair opportunity to litigate their claims, and the hearing officer exercised a considerable amount of patience, in spite of plaintiffs' counsel's interruptions, redundant objections, and repeated insistence on pursuing irrelevant lines of inquiry.

## D. *Separation of Powers*

The hearing officer found the use of the property for nonoperative vehicle storage and as a junkyard violated the Sonoma County Code and ordered abatement of the violation within 45 days. Additionally, plaintiffs were ordered to request inspection to

---

[6] The federal court's finding that plaintiffs' claims implicated a constitutional property right cognizable under title 42 United States Code section 1983 has no bearing on our conclusion plaintiffs do not have a fundamental vested right that would entitle them to independent judgment review. The existence of a property interest cognizable under section 1983 " 'turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval.' " (*Clark*, *supra*, 48 Cal.App.4th at p. 1180.) In contrast, a fundamental vested right exists where a right has been legitimately acquired and is fundamental in its economic or personal effect. (*Strumsky v. San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d at p. 34.)

verify abatement of the violation within this time period. Plaintiffs argue only the judicial branch can command such relief, and therefore the hearing officer's order amounts to a violation of California's separation of powers.[7] Plaintiffs also argue the order to allow an inspection violates their right against unwarranted search and seizure. We find both arguments unavailing.[8]

"The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch." (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297.) Its primary purpose "is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government. [Citations.] The doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (*Parker v. Riley* (1941) 18 Cal.2d 83, 89–90.) "Time has blurred the purity of division of governmental functions, . . . particularly with the advent of administrative agencies." (*Imperial Irrigation Dist. v. State Wat. Resources Control Bd.* (1990) 225 Cal.App.3d 548, 565.) "We have had little or no concern for avoiding a mixture of three or more kinds of power in the same agency; we have had much more concern for avoiding or

---

[7] In the same section of their brief, plaintiffs contend the hearing officer overstepped her authority because the zoning ordinance allows for the storage of operable vehicles on the property and thus does not prohibit plaintiffs from pursuing their hobbies of car collecting and racing. It is unclear how this concern implicates separation of powers, and plaintiffs appear to have abandoned the issue on reply. In any event, the administrative order does not prevent plaintiffs from pursuing their hobbies on the property, it merely limits the manner in which they may do so. Plaintiffs also once again argue their car collecting hobby is a permissible grandfathered use. As discussed above, substantial evidence suggests otherwise.

[8] The County asserts we need not reach the merits of plaintiffs' separation-of-powers arguments because they were not raised at the administrative hearing. But it is unclear plaintiffs had an opportunity to challenge the scope of the administrative order as it was issued after the conclusion of the hearing. Moreover, "we have discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.)

14

minimizing unchecked power." (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 361–362, italics omitted.)

We find no separation-of-powers violation here. That an administrative hearing officer appointed by the County exercised quasi-judicial powers is unremarkable. "Possibly the most significant structural change in our government since the date of its founding has occurred in the twentieth century development of a huge administrative bureaucracy. To deal with the manifold problems of modern society these administrators have been delegated substantial quasi-legislative and quasi-adjudicative powers." (*Bixby v. Pierno*, *supra*, 4 Cal.3d at p. 142.) "An administrative agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief . . . so long as (i) such activities are authorized by statute or legislation and are reasonably necessary to effectuate the administrative agency's primary, legitimate regulatory purposes, and (ii) the 'essential' judicial power (i.e., the power to make enforceable, binding judgments) remains ultimately in the courts, through review of agency determinations." (*McHugh v. Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 372, italics omitted.)

In this case, the hearing officer's actions were authorized by statute. While superior courts have exclusive jurisdiction over actions in equity, that exclusive jurisdiction does not extend to abatement proceedings. (*Flahive v. City of Dana Point* (1999) 72 Cal.App.4th 241, 244.) Under state law, municipalities have the authority to establish procedures for the abatement of nuisances, such as the one at issue here. (See, e.g., Civ. Code, § 3494 ["A public nuisance may be abated by any public body or officer authorized thereto by law."]; Gov. Code, § 25845 [board of supervisors may establish procedures for the abatement of a nuisance].) In accordance with state law, the Sonoma County Code expressly grants hearing officers the power to issue findings of fact and conclusions of law in abatement proceedings, and if a violation is found to exist, an order that the violation be abated within a certain time. (Sonoma County Code, § 1-7.3, subd. (g)(1).) We also find the hearing officer's order was reasonably necessary and narrowly tailored to effectuate a legitimate regulatory purpose, specifically the abatement of zoning violations. Additionally, the hearing officer did not assume an essential

15

judicial power, as her decision was subject to judicial review. (§ 1094.5; Sonoma County Code, § 1-7.5.)

We also reject plaintiffs' contention that the abatement order violated plaintiffs' right against unwarranted search and seizure. It is true "government officials engaged in the abatement of a public nuisance must have a warrant to enter any private property where such entry would invade a constitutionally protected privacy interest." (*Gleaves v. Waters* (1985) 175 Cal.App.3d 413, 419.) But "[a] recognized exception to the Fourth Amendment's proscription against warrantless searches is a search that is based upon consent." (*People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183, 1198.) In this case, the abatement order states plaintiffs must request inspection of the property to verify abatement of the violation. Nothing in the order suggests the property will be subject to a warrantless search if plaintiffs fail to request such an inspection.[9, 10]

## III.  DISPOSITION

The judgment is affirmed. The County shall be entitled to recover its costs on appeal.

---

[9] Plaintiffs' reliance on *Vidaurri v. Superior Court* (1970) 13 Cal.App.3d 550, is misplaced. In that criminal matter, the court held evidence of marijuana grown on defendant's property should be suppressed because it was discovered by a state agricultural inspector during a warrantless search of the property. (*Id.* at pp. 552–553.) The court did not address the issue of whether an administrative order directing a property owner to request inspection to verify abatement constitutes a Fourth Amendment violation.

[10] As plaintiffs do not argue their consent has been coerced, we decline to address the issue.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.